# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 01-468

Albert F. Mauerhan, Appellant,

v.

Anthony J. Principi,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Argued May 6, 2002                  Decided   October 30, 2002  )

*Ronald L. Smith*, of Washington, D.C., for the appellant.

*Richard A. Cohn*, with whom *Tim S. McClain*, General Counsel; *Joan E. Moriarty*, Acting Assistant General Counsel; *Patricia Trujillo*, Acting Deputy Assistant General Counsel; and *Elizabeth H. Goldberg*, Appellate Attorney, were on the brief, all of Washington, D.C., for the appellee.

Before KRAMER, *Chief Judge*, and FARLEY and GREENE, *Judges*.

GREENE, *Judge*: Veteran Albert Mauerhan appeals, through counsel, a November 28, 2000, decision of the Board of Veterans' Appeals (Board) that, relying on 38 C.F.R. § 4.130, Diagnostic Code (DC) 9411, denied an increased initial rating for Mr. Mauerhan's post-traumatic stress disorder (PTSD). Mr. Mauerhan filed a brief and a reply brief, and the Secretary filed a brief. A motion for expedited consideration was granted due to the veteran's failing health, and in May 2002 a panel of this Court heard oral argument. On appeal, Mr. Mauerhan argues that the Board's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, because the Board failed to determine a disability rating based on PTSD symptoms established in the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders*, as revised in the 1994, fourth edition (DSM-IV). We conclude that the Board's decision was not clearly erroneous and will affirm the Board's decision.

## I. FACTS

Mr. Mauerhan served on active duty in the U.S. Army from September 1967 to November 1969, including service in Vietnam. Record (R.) at 16. In June 1998, he filed a claim for VA service connection for his PTSD. R. at 45-46. In an August 1998 letter in support of his claim, he detailed his Army experiences in Vietnam and described psychological difficulties he had suffered since his return from Vietnam. R. at 52-54. In October 1998, he submitted a treatment report from the Elkton, Maryland, "Vet Center," indicating that he had begun medical treatment in February 1998 in response to the following symptoms: Nightmares of Vietnam with intense anxiety; guilt; suicidal thoughts; hypervigalance; and occasional intrusive thoughts of a friend being killed in Vietnam. R. at 58-60. The examiner noted that Mr. Mauerhan was anxious and tense and that he described himself as moody and irritable. R. at 59. The examiner also noted that Mr. Mauerhan exhibited deep regret and severe guilt for his Vietnam service. R. at 58-60. During the treatment, Mr. Mauerhan reported having been "arrested on one occasion for shooting at someone in his yard." *Id.* The medical reports indicated that he had attempted suicide three times, often felt depressed, and did not feel close to his family. *Id.* Mr. Mauerhan was diagnosed with chronic PTSD and dysthymia. *Id.* (Dysthymia is "a disorder of mood." STEDMAN'S MEDICAL DICTIONARY 436 (5th unabridged lawyers ed. 1982)).

In January 1999, Mr. Mauerhan was given a VA compensation and pension examination for PTSD. R. at 67-72. During that examination, he reported that he had married at age 18 and divorced 11 years later. *Id.* There were six children from that marriage. *Id.* He stated that he had remarried shortly after the divorce, but that that marriage lasted only two years. R. at 68. At the time of the examination, Mr. Mauerhan reported that he has been in a 24-year relationship with a woman, whom he calls his wife. *Id.* He reported having flashbacks and intrusive memories of Vietnam and felt as though he never left Vietnam. R. at 67. He stated that he had overdosed on pills a number of times and had attempted to kill himself with a rifle. *Id.* He told the examiner that before enlisting in the Army he had never kept guns in the house but that he currently had five guns and slept with one loaded under his mattress. *Id.* Mr. Mauerhan recalled to the examiner his desire to trade places with his friend who was killed after stepping on a landmine in Vietnam, and the intense shock he still feels when recalling the explosion of a Vietnamese bus loaded with civilians. R. at 70. He reported that concern for his own safety made it extremely difficult to sleep, often

prompting him to "walk around the house and check the doors and windows over and over again." R. at 68. Although he recounted numerous arguments and difficulties at work, Mr. Mauerhan reported that he had maintained his current job longer than any other position he had held, and was going into his ninth year as an employee of the U.S. Postal Service. R. at 71.

The examiner observed Mr. Mauerhan's speech to be clear and coherent, "although he tended to be overly talkative and a bit tangential at times . . . ." *Id.* The examiner found Mr. Mauerhan in "good reality contact," oriented, and providing no evidence of any delusions or hallucinations. *Id.* Mr. Mauerhan's Global Assessment of Functioning (GAF) score of 52 was determined to be "indicative of moderate to serious symptomatology involving short temper, insomnia, hypervigilance, social isolation, and frequent reexperiencing." R. at 72. The examiner concluded that Mr. Mauerhan's PTSD was secondary to his military service and that his prognosis was "fair." *Id.* The examiner "strongly recommended" that Mr. Mauerhan continue psychotherapy and reconsider psychotropic medication for his sleep difficulties and intrusive thoughts. *Id.*

In April of 1999, a VA regional office (RO) awarded Mr. Mauerhan service connection for PTSD and assigned him a 30% disability rating. R. at 76-81. Mr. Mauerhan filed a Notice of Disagreement seeking an increased rating for his service-connected PTSD, based on an April 1999 treatment report from the Vet Center. R. at 83, 96. The treatment report recorded Mr. Mauerhan's progress in the immediately preceding months, but also noted that he reported an increase in symptoms. R. at 84. He reported experiencing "frequent nightmares, painful intrusive thoughts, [and] overwhelming feelings of guilt and irritability." *Id.* He also indicated that he was "consumed at times by anger and sadness." *Id.* The treatment report listed his prognosis as "guarded." *Id.* Mr. Mauerhan was given another VA examination, which confirmed that he had chronic PTSD and as of May 1999 had a GAF score of 50. R. at 86-88. The RO issued a decision continuing Mr. Mauerhan's 30% disability rating, and on August 16, 1999, Mr. Mauerhan appealed to the Board. R. at 98-101, 113.

On November 28, 2000, the Board denied entitlement to an increased initial rating of Mr. Mauerhan's PTSD, concluding that his condition does not warrant a rating greater than 30%. R. at 1-13. The Board recounted the medical reports from Mr. Mauerhan's PTSD treatments and examinations. R. at 3-10. The Board then discussed 38 C.F.R. § 4.130, DC 9411, the regulation

applied in rating PTSD, and detailed the criteria that would result in 30% or 50% ratings. R. at 11. In applying the rating criteria to Mr. Mauerhan's condition, the Board stated:

> Taking into account all the evidence, the Board finds that the veteran is currently properly rated as 30 percent disabl[ed]. Specifically, the evidence does not demonstrate that the veteran's PTSD is manifested by occupational and social impairment with reduced reliability and productivity due to such symptoms as flattened affect, circumstantial, circumlocutory, or stereotyped speech, panic attacks more than once a week, difficulty in understanding complex commands, impairment of short- and long-term memory, impaired judgment and abstract thinking, or disturbances of motivation. Though the veteran does have some difficulty in establishing and maintaining effective work and social relationships, that is, he has gotten into fights on the job, and is socially isolated, it is noted that he has been able to maintain a 24[-]year relationship with his partner, and he does stay in contact with his children. Further, he has been able to hold a job at the post office for the past nine and a half years. As to disturbances of mood, though the veteran does suffer from depression as well as thoughts of a foreshortened future, as well as of death and intermittent suicidal ideation, the report of the May 1999 VA PTSD examination found that he generally functions satisfactorily with routine behavior, self-care and normal conversation, and his general cognitive processes appeared to be intact. His [GAF] score was found to be 52 in his January 1999 examination, and 50 in his May 1999 examination, which would indicate only moderate to severe symptoms, or moderate difficulty to serious impairment in social, occupational, or school functioning. The report of the January 1999 examination found the veteran to be in good contact with reality, and oriented in all three spheres, with no evidence of any delusions or hallucinations, and an intact memory.

R. at 11-12. In conclusion, the Board held that the "evidence does not demonstrate that the veteran's PTSD warrants more than a 30 percent disability evaluation under the applicable schedular criteria." R. at 12.

On appeal, Mr. Mauerhan argues that the Board erred in relying on the 30% and 50% rating criteria listed under 38 C.F.R. § 4.130, as *requirements* rather than *examples*, because those criteria apply to all mental disorders. Instead, he claims that the Board, in determining the appropriate rating, should have considered the criteria specific to PTSD, set forth in the DSM-IV. He contends that many of the symptoms listed in § 4.130 are not found in the DSM-IV as being associated with PTSD and, as a result, do not apply to PTSD claims. He claims that the Board's failure to use the DSM-IV is arbitrary and capricious, an abuse of discretion, and is not in accordance with the law. In response, the Secretary maintains that the Board did not err when it applied the criteria listed in the rating code to the evidence contained in the record in order to assign the appropriate disability

4

rating, and that the Court should affirm the Board's decision because it is supported by a plausible basis in the record.

## II. ANALYSIS

Mr. Mauerhan seeks an increased initial disability rating for his service-connected PTSD, and alleges that the Board erred in declining to grant him a disability rating greater than 30%. In light of such a challenge, the Court may set aside the Board's finding as to the appropriate disability rating only if it is determined to be clearly erroneous. *See* 38 U.S.C. § 7261(a)(4); *Zink v. Brown*, 10 Vet.App. 258, 259 (1997) (per curiam order); *Gilbert v. Derwinski*, 1 Vet.App. 49, 52-53 (1990). Under this standard, the Court may not "substitute its judgment for that of the B[oard] on issues of material fact" and may only overturn a finding of the Board if there does not exist a "plausible basis" in the record that supports the factual determination at issue. *Id.* at 53; *see also* 38 U.S.C. § 7261(a)(4).

Once a veteran has been awarded service connection for a disease or disorder, VA will assign the veteran an appropriate disability rating after referring to the schedule of ratings for reductions in earning capacity for the specific injury or disability. *See* 38 U.S.C. § 1155. The rating is based, as far as practicable, upon the average impairments of earning capacity, in civil occupations, resulting from such injuries. *Id.* The Secretary has promulgated regulations to implement assignment of an appropriate disability rating. *See generally* 38 C.F.R. Pt. 4. In the process of evaluating a mental disorder, VA is required to consider a number of pertinent factors, such as the frequency, severity, and duration of a veteran's psychiatric symptoms. *See* 38 C.F.R. § 4.126 (2001). After consideration of these factors, and based on all the evidence of record that bears on occupational and social impairment, VA must assign a disability rating that most closely reflects the level of social and occupational impairment a veteran is suffering. *See id.* Where there is a question as to which of two evaluations to apply, the Board will assign the higher rating if a veteran's disability more closely resembles the criteria for the higher rating; otherwise the lower rating will be assigned. *See* 38 C.F.R. § 4.7 (2001). Under the "General Rating Formula for Mental Disorders," a rating of 30% for PTSD is appropriate when a veteran exhibits the following:

> Occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks

5

(although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events)[.]

38 C.F.R. § 4.130, DC 9411 and 9440 (2001). A mental disorder is to be rated 50% disabling when the veteran exhibits the following:

Occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships[.]

*Id*.

Mr. Mauerhan argues that the Board erred by treating the factors specified in DC 9440 as requirements for a particular rating, rather than as examples of conditions that would warrant a specific rating assignment. He contends that many of the criteria listed in the rating schedule are not found in the DSM-IV as being associated with PTSD, and that the Board should have based its rating on the specific effects of the PTSD symptoms set forth in the DSM-IV and the degree to which those symptoms affected his occupational and social orientation. Mr. Mauerhan asserts that by restating verbatim the criteria listed in the rating schedule under a 50% rating, and then denying a 50% rating because he did not exhibit those precise symptoms, "the Board unlawfully denied the [v]eteran an increased rating for his service-connected PTSD because it found he did not have symptoms unrelated to PTSD." Appellant's Brief (Br.) at 8.

Mr. Mauerhan's argument, that the Board improperly interpreted § 4.130, DC 9440, is a question of law, which the Court reviews de novo. *See Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc) (noting that Court reviews agency interpretations of law de novo). His assertion that the symptoms listed in the DSM-IV should, in effect, replace the criteria listed in DC 9440 as the basis for rating PTSD claims is not supported by a plain reading of the regulation. *See Glover v. West*, 185 F.3d 1328, 1332 (Fed. Cir. 1999), *cert. denied*, 529 U.S. 1108 (2000) ("In construing a statute or regulation, we commence by inspecting its language to ascertain its plain meaning."). Section 4.130 states: "The nomenclature employed in this portion of the rating schedule is *based upon* the [DSM-IV]. Rating agencies must be thoroughly familiar with this manual to . . . apply the general

6

rating formula for mental disorders in § 4.130." 38 C.F.R. § 4.130 (emphasis added). Section 4.130 then lists diagnostic codes for more than 30 mental disorders and sets forth *one* "general rating formula" to be used in rating *all* the listed disorders. Although § 4.130 makes clear that an understanding of the DSM-IV is essential for properly applying the rating formula, nowhere does it state that consideration of the DSM-IV in any way relieves VA from fully considering the specific rating criteria outlined in 38 C.F.R. § 4.130 when rating the severity of a claimant's disorder.

Mr. Mauerhan contends that the Board committed error by specifically referencing "such symptoms as flattened affect, circumstantial, circumlocutory, or stereotyped speech, panic attacks more than once a week, difficulty in understanding complex commands, impairment of short- and long-term memory, impaired judgment and abstract thinking, or disturbances of motivation." Appellant's Br. at 13-14, 18-19; *see also* R. at 11. He suggests that because every one of those symptoms is not relevant to PTSD, the Board should not have considered each one in rating his disorder. This argument is not entirely persuasive.

First, the symptoms recited under both the 30% and 50% ratings in 38 C.F.R. § 4.130 follow the phrase "such symptoms as." By definition, "such as" means "for example" or "like or similar to." *See* WEBSTER'S NEW WORLD DICTIONARY (3rd coll. ed. 1988) 1337. The use of the term "such as" demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Accordingly, any suggestion that the Board was required, in complying with the regulation, to find the presence of all, most, or even some, of the enumerated symptoms is unsupported by a reading of the plain language of the regulation. *See Glover*, 185 F.3d at 1332 (stating that when terms of regulation are unambiguous, "no further inquiry is usually required"). Mr. Mauerhan is correct that the factors listed in the rating formula are "examples" of conditions that warrant particular ratings. Without those examples, differentiating a 30% evaluation from a 50% evaluation would be extremely ambiguous. In § 4.130, removing the factors following the phrase "such symptoms as" would leave the Board with the difficult task of determining whether a veteran suffered from "[o]ccupational and social impairment with reduced reliability and productivity" (50% rating) or "[o]ccupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although

7

generally functioning satisfactorily, with routine behavior, self-care, and conversation normal)" (30% rating). *See* 38 C.F.R. § 4.130.

The Secretary, acting within his authority to "adopt and apply a schedule of ratings," chose to create *one general* rating formula for mental disorders. 38 U.S.C. § 1155; *see* 38 U.S.C. § 501; 38 C.F.R. § 4.130. By establishing one general formula to be used in rating more than 30 mental disorders, there can be no doubt that the Secretary anticipated that *any* list of symptoms justifying a particular rating would in many situations be either under- or over-inclusive. The Secretary's use of the phrase "such symptoms as," followed by a list of examples, provides guidance as to the severity of symptoms contemplated for each rating, in addition to permitting consideration of other symptoms, particular to each veteran and disorder, and the effect of those symptoms on the claimant's social and work situation. This construction is not inconsistent with *Cohen v. Brown*, 10 Vet.App. 128 (1997). In *Cohen*, the Court held that the DSM-IV criteria will be considered in making the initial determination of service connection for PTSD, but that once service connection is granted, the diagnostic code "will be for application to establish the appropriate disability rating." 10 Vet.App. at 152. As stated above, the evidence considered in determining the level of impairment under § 4.130 is not restricted to the symptoms provided in the diagnostic code. Instead, the rating specialist is to consider all symptoms of a claimant's condition that affect the level of occupational and social impairment, including, if applicable, those identified in the DSM-IV. *See* 38 C.F.R. § 4.126 (2001). If the evidence demonstrates that a claimant suffers symptoms or effects that cause occupational or social impairment equivalent to what would be caused by the symptoms listed in the diagnostic code, the appropriate, equivalent rating will be assigned.

Further, as the Secretary accurately points out, the idea of evaluating PTSD under a rating formula separate from that for other mental disorders was specifically considered and rejected when 38 C.F.R. §§ 4.16 and 4.125 through 4.132 were amended in 1996. The portion of the Federal Register that records the amendment process reads:

> One commentator suggested that we evaluate [PTSD] not under a general rating formula for mental disorders but under a separate formula based on the frequency of symptoms particular to PTSD, i.e., nightmares, flashbacks, troubling intrusive memories, uncontrollable rage, and startle response.

> The distinctive PTSD symptoms listed by the commentator are used to diagnose PTSD rather than evaluate the degree of disability resulting from the

8

> condition. Although certain symptoms must be present in order to establish the diagnosis of PTSD, as with other conditions it is not the symptoms, but their effects, that determine the level of impairment. For example, it is not the presence of "flashbacks," per se, but their effects, such as impaired impulse control, anxiety, or difficulty adapting to stressful situations, that determine the evaluation. We have, therefore, made no changes based on this suggestion.

61 Fed. Reg. 52,695, 52,697 (Oct. 8, 1996). The fact that the regulation is written with this built-in versatility does not make it inconsistent with the underlying statute. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc*., 467 U.S. 837, 843-44 (1984) ("If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute."). We therefore reject that part of Mr. Mauerhan's argument that the DSM-IV criteria should be the exclusive basis in the schedule governing ratings for PTSD and hold that § 4.130 "is a reasonable and permissible construction" of 38 U.S.C. § 1155. *See Gallegos v. Principi*, 283 F.3d 1309, 1314 (Fed. Cir. 2002).

In its decision, the Board recited the 30% and 50% rating criteria for mental disorders, discussed other symptoms Mr. Mauerhan displayed, and decided that the medical evidence did not show that Mr. Mauerhan's PTSD was of a degree that warrants a 50% rating. R. at 11. Specifically, the Board set forth his symptomatology as reported in the September 1998 and April 1999 treatment reports from the Vet Center, the January 1999 and May 1999 VA compensation and pension examination reports, which related symptoms both inside and outside the specific rating criteria used in § 4.130, and the diagnoses provided by the examiners. *Id.* Contrary to Mr. Mauerhan's argument that the Board limited its consideration exclusively to the factors specified in the rating schedule, the Board included in its analysis a discussion of evidence reflecting that he suffers from symptoms such as thoughts of a foreshortened future, which is a DSM-IV criterion for diagnosis and may effect occupational and social impairment, but is not listed under either the 30% or 50% rating. R. at 12. Therefore, although Mr. Mauerhan is correct that the Board may look at criteria outside of the rating code in determining the level of occupational and social impairment, it cannot be said that the Board, in this case, limited its analysis solely to whether he exhibited symptoms listed in the 30% and 50% rating levels. Although the Board acknowledged that Mr. Mauerhan does have "some difficulty in establishing and maintaining effective work and social relationships," it found that his impairment does not warrant the 50% rating, based in part on his ability to maintain a 24-year relationship with

his partner, contact with his children, and nine and one-half years of employment at his then-current job.  R. at 11; *see* 38 C.F.R. § 4.130, DC 9440.  Because the Board, in determining that Mr. Mauerhan's PTSD more closely resembled a 30% level of impairment due to his ability to maintain some social and occupational relationships, based its decision on all of his symptomatology, a plausible basis in the record exists for the November 2000 decision and therefore that decision was not clearly erroneous.  *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table).

## III.  CONCLUSION

After consideration of the pleadings and arguments of the parties, and upon review of the record, the Court holds that Mr. Mauerhan has not demonstrated that the Board committed either legal or factual error that would warrant reversal or remand.  The Court is also satisfied that the Board's decision fulfills the "reasons or bases" requirements of 38 U.S.C. § 7104(d)(1).

The decision of the Board is AFFIRMED.