http://www.va.gov/vetapp16/Files6/1644949.txt

Citation Nr: 1644949 
Decision Date: 11/30/16 Archive Date: 12/09/16

DOCKET NO. 09-15 661 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama

THE ISSUE

Entitlement to an initial evaluation in excess of 30 percent for service-connected posttraumatic stress disorder ("PTSD") beginning on and after March 12, 2009. 

REPRESENTATION

Veteran represented by: Paralyzed Veterans of America, Inc.

ATTORNEY FOR THE BOARD

M. Timbers, Associate Counsel

INTRODUCTION

The Veran had active duty service from November 1982 through November 1985 and from September 1988 through September 2005 with the United States Army. The Veteran additionally served with the National Guard, from December 1987 through September 1988. 

This appeal comes to the Board of Veterans' Appeals ("Board") from an August 2007 rating decision by the Department of Veterans Affairs ("VA") Regional Office ("RO") in Montgomery, Alabama (hereinafter Agency of Original Jurisdiction ("AOJ")). 

This matter has twice been before the Board. Most recently, in December 2014, the Board remanded the issue on appeal to the RO for further development, including the procurement of private treatment records. The Board notes the Veteran produced these private treatment records after the file was transferred to the Board and therefore these records have not been initially considered by the RO. However, the file includes a written statement from the Veteran and his representative, waiving RO consideration of any additional evidence submitted. See 38 C.F.R. 20.1304(c). Therefore, as the requested development was completed, and the matter has been properly returned to the Board, the Board finds appellate consideration may proceed without prejudice to the Veteran. See Stegall v. West, 11. Vet. App. 268 (1998). 

In December 2014, the Board additionally adjudicated the Veteran's claim for entitlement to an initial rating in excess of 10 percent for his PTSD prior to March 12, 2009. The Veteran's claim was denied, and therefore the initial rating of 10 percent disabling remained intact from October 1, 2005, the date of the original award of service connection, through March 12, 2009. The Veteran did not appeal this denial to the Court of Appeals of Veterans Claims ("Court"), thereby making the December 2014 Board denial final. See 38 U.S.C.A. §§ 7103(a); 7104(b); 38 C.F.R. § 20.1100(a). More to the point, the Veteran's subsequent submission of private psychological treatment records, which date back to this prior period, does not reopen this previously decided issue because new and material evidence requirements do not apply to increased rating claims. Suttmann v. Brown, 5 Vet. App. 127, 136-37 (1993); Abernathy v. Principi, 3 Vet. App. 461, 464 (1992); see also VA Adjudication and Procedure Manual, M21-1MR, Part III, Subpart ii, ch. 2, sec. E. As such, this issue is not before the Board at this time. 

Finally, the Board notes this appeal was processed using Virtual VA and the Veterans Benefits Management System ("VBMS"). Accordingly, any future consideration of this Veteran's case should take into consideration the existence of this electronic record.

FINDING OF FACT

Beginning on and after March 12, 2009, the Veteran's service-connected PTSD was manifested by psychiatric symptoms causing occupational and social impairment with reduced reliability and productivity; however, neither occupational and social impairment with deficiencies in most areas nor total occupational and social impairment is shown. 

CONCLUSION OF LAW

Beginning on March 12, 2009 and continuing to the present, the Veteran's service-connected PTSD meets the requirements for a 50 percent, but no greater, disability rating. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.2, 4.3, 4.6 4.7, 4.10, 4.21, 4.126, 4.130, Diagnostic Code 9411 (2015).

REASONS AND BASES FOR FINDING AND CONCLUSION

VCAA Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2014) includes enhanced duties to notify and assist claimants for VA benefits. VA regulations implementing the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2015).
Notice requirements under the VCAA essentially require VA to notify a claimant of any evidence that is necessary to substantiate the claim(s), as well as the evidence that the VA will attempt to obtain and which evidence he or she is responsible for providing. See, e.g., Quartuccio v. Principi, 16 Vet. App. 183 (2002) (addressing the duties imposed by 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b)).

As delineated in Pelegrini v. Principi, 18 Vet. App. 112 (2004), after a substantially complete application for benefits is received, proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim(s); (2) that VA will seek to provide; (3) that the claimant is expected to provide; and (4) must ask the claimant to provide any evidence in her or his possession that pertains to the claim(s), in accordance with 38 C.F.R. § 3.159(b)(1). 

For claims involving an increased rating, a claimant must be provided with information pertaining to assignment of disability ratings (to include the rating criteria for all higher ratings for a disability), as well as information regarding the effective date that may be assigned. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). The VCAA requires only generic notice as to the type of evidence needed to substantiate the claim, namely, evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on employment, as well as general notice regarding how disability ratings and effective dates are assigned. Vazquez-Flores v. Shinseki, 580 F.3d 1270, 1277 (2009).

VCAA-compliant notice must be provided to a claimant before the initial unfavorable decision on a claim for VA benefits by the AOJ (here, the RO). Id.; Pelegrini, 18 Vet. App. at 112. See also Disabled American Veterans v. Secretary of Veterans Affairs, 327 F.3d 1339 (Fed. Cir. 2003). However, both the U.S. Court of Appeals for Veterans Claims ("Court") and the Federal Circuit Court of Appeals ("Federal Circuit Court") have held that, once service connection is granted, additional VCAA notice is not required, and any defect in the notice is not prejudicial. Goodwin v. Peake, 22 Vet. App. 128, 137 (2008); Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). See also VAOPGCPREC 8-2003 (December 22, 2003). 
In the instant appeal, the Veteran's claim was first decided in an August 2007 Rating Decision. However, in June 2006 the Veteran was provided with notice of the evidence and information necessary to substantiate his claim for an increased rating, as well as his responsibilities, and the responsibilities of the VA, in obtaining such evidence and information. Additionally, the Veteran was notified of the information and evidence necessary to establish a disability rating and an effective date. Moreover, the Veteran appealed the initially assigned rating for his PTSD from the original grant of service connection. No further notice is required for such downstream issues. VAOPGCPREC 8-2003, 69 Fed. Reg. 25180 (May 5, 2004); Dingess v. Nicholson, 19 Vet. App. 473, 490 (2006). Accordingly, the Board finds that the VA has satisfied its duty to notify.
 
Pertinent to the VA's duty to assist, the record also reflects that the VA has undertaken appropriate actions to obtain all relevant evidence material to this claim. The RO has secured the Veteran's service treatment records ("STRs"), VA treatment records, and VA examinations. For his part, the Veteran has submitted personal statements, argument from his representative, and additional private medical evidence. The Veteran has not identified any additional, outstanding evidence that is relevant to the PTSD claim being decided herein. 

The Veteran was also afforded VA examinations in June 2006 and November 2013, in connection with his claim for an increased evaluation for his service-connected PTSD. The Board finds that these VA examinations are adequate for rating purposes, as they fully address the rating criteria and evidence of record that are relevant to rating his service connected PTSD manifestations. Moreover, there is no objective evidence indicating that there has been a material change in the severity of the Veteran's service-connected PTSD since he was last examined in November 2013. 38 C.F.R. § 3.327(a); Palczewski v. Nicholson, 21 Vet. App. 174, 182-83; VAOPGCPREC 11-95. Neither the medical evidence of record, nor the Veteran's lay statements reveal additional worsening of the PTSD disability and associated manifestations since the date of the Veteran's last VA examination. Therefore, a new VA examination to rate the severity of the Veteran's PTSD is not warranted. 
Finally, as was also noted above, this claim was previously remanded by the Board in December 2014. A remand by the Board confers upon the claimant, as a matter of law, the right to compliance with the remand order. Stegall v. West, 11 Vet. App. 268 (1998). Nonetheless, it is only substantial compliance, rather than strict compliance, with the terms of a remand that is required. See D'Aries v. Peake, 22 Vet. App. 97, 104 (2008). The Board remanded this claim in order to attempt to obtain treatment records from the Veteran's private psychologist. To that end, the record now contains a record of the Veteran's private psychological appointments, as well as updated VA treatment records. Accordingly, the VA has substantially complied with the December 2014 remand directives. 

In summation, the Board finds the duties imposed by the VCAA have been considered and satisfied. The Veteran has been notified and made aware of the evidence needed to substantiate this claim, the avenues through which he might obtain such evidence, and the allocation of responsibilities between himself and VA in obtaining such evidence. There is no additional notice that should be provided, nor is there any indication that there is additional existing evidence to obtain, or development required, to create any additional evidence to be considered in connection with the claim. Consequently, any error in the sequence of events or content of the notice is not shown to prejudice the Veteran or to have any effect on the appeal. Any such error is deemed harmless and does not preclude appellate consideration of the matter herein decided, at this juncture. See Mayfield v. Nicholson, 20 Vet. App. 537, 543 (2006) (rejecting the argument that the Board lacks authority to consider harmless error). See also ATD Corp. v. Lydall, Inc., 159 F.3d 534, 549 (Fed. Cir. 1998).

Governing Laws and Regulations for Increased Ratings

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities ("Rating Schedule"), found in 38 C.F.R. § 4.1 (2015). The rating schedule is primarily a guide in the evaluation of disabilities resulting from all types of diseases and injuries encountered as a result of, or incident to, military service. Separate diagnostic codes identify the various disabilities and each disability must be viewed in relation to its history and the limitation of activity imposed by the disabling condition. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.10. As such, each disability must be considered from the point of view of the veteran working or seeking work. 38 C.F.R. § 4.2.

In considering the severity of a disability, it is essential to trace the medical history of the Veteran. 38 C.F.R. §§ 4.1, 4.2, 4.41. Consideration of the whole-recorded history is necessary so that a rating may accurately reflect the elements of disability present. 38 C.F.R. § 4.2; Peyton v. Derwinski, 1 Vet. App. 282 (1991). Although the regulations do not give past medical reports precedence over current findings, the Board is to consider the Veteran's medical history in determining the applicability of a higher rating for the entire period in which the appeal has been pending. Powell v. West, 13 Vet. App. 31, 34 (1999).

As such, the Board acknowledges that because the Veteran timely appealed the rating initially assigned for his disability, the Board must consider entitlement to "staged" ratings to compensate for times since filing the claim when the disability may have been more severe than at other times during the course of the appeal. See Fenderson v. West, 12 Vet. App. 119, 125-26 (1999). 

Pertinent regulations do not require that all cases show all findings specified by the Rating Schedule, but that findings sufficiently characteristic to identify the disease and the resulting disability and coordination of rating with impairment of function. 38 C.F.R. § 4.21. Therefore, the Board has considered the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of his disability in reaching its decision. Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991). 

Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7.

The Board notes that in analyzing this claim, the Secretary, and therefore the Board, has an obligation to provide the Veteran with the "benefit of the doubt" on questions material to this decisions, for which there is an approximate balance of positive and negative evidence. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

When evaluating a service-connected mental disorder, the VA will review the Veteran's medical history to determine how badly the disorder has disrupted his social and occupational functioning. Specifically, the VA must review the frequency, severity, and duration of the psychiatric symptoms, the length of remissions, and the Veteran's capacity for adjustment during periods of remission. 38 C.F.R. § 4.126(a). The evaluation must be based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner's assessment of the level of disability at the moment of the examination. 38 C.F.R. § 4.126(a). While the extent of a Veteran's social impairment is considered, the rating cannot be assigned on these limitations alone. 38 C.F.R. § 4.126(b).

The level of disability is then rated according to a General Rating Formula for Mental Disorders, codified at 38 C.F.R. § 4.130 ("General Rating Formula"), which provides for ratings of zero, 10, 30, 50, 70, or 100 percent. The VA compensates Veterans beginning at 10 percent disability, and compensation increases at each level.

In the instant appeal, the RO granted service connection and assigned disability ratings under Diagnostic Code ("DC") 9411, which is used to evaluate PTSD. Under this DC, a 30 percent rating is assigned for occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactory, with routine behavior, self-care, and conversation normal), due to such symptoms as depressed mood; anxiety; suspiciousness; panic attacks (weekly or less often); chronic sleep impairment; or mild memory loss (such as forgetting names, directions, recent events).

A 50 percent rating is assigned for occupational and social impairment with reduced reliability and productivity due to such symptoms as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short-and long-term memory; impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. Id.

A 70 percent evaluation is warranted where there is occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as suicidal ideation; obsessional rituals which interfere with routine activities; intermittently illogical, obscure, or irrelevant speech; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and inability to establish and maintain effective relationships. Id.

A 100 percent evaluation is assignable where there is total occupational and social impairment, due to such symptoms as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); and disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id.

Evaluation under this formula is "symptom driven," meaning that "symptomatology should be the fact-finder's primary focus when deciding entitlement to a given disability rating." Vazquez-Claudio v. Shinseki, 713 F.3d 112, 116-17 (Fed. Cir. 2013). In the context of determining whether a higher disability evaluation is warranted, the analysis requires considering "not only the presence of certain symptoms[,] but also that those symptoms have caused occupational and social impairment in most of the referenced areas" - i.e., "the regulation ... requires an ultimate factual conclusion as to the Veteran's level of impairment in 'most areas.'" Vazquez-Claudio, 713 F.3d at 117-18; 38 C.F.R. § 4.130, Diagnostic Code 9411. 
The Board notes that the Veteran need not exhibit "all, most, or even some" of the symptoms enumerated in the General Rating Formula for Mental Disorders to warrant the assignment of a higher rating. Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). The symptoms listed are not exhaustive, but rather "serve as examples of the type and degree of symptoms, or their effects, that would justify a particular rating." Id. In particular, use of such terminology permits consideration of items listed as well as other symptoms and contemplates the effect of those symptoms on the claimant's social and work situation. Id. 

Effective March 19, 2015, VA adopted as final, without change, an interim final rule amending the portion of its Schedule for Rating Disabilities dealing with mental disorders. The interim final rule replaced outdated references with references to the Fifth Edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-5) and updated the nomenclature used to refer to certain mental disorders in accordance with DSM-5. Specifically, the rulemaking amended 38 C.F.R. §§ 3.384, 4.125, 4.126, 4.127, and 4.130. However, the provisions of this final rule do not apply to claims that were certified to the Board on or before August 4, 2014, even if such claims are subsequently remanded to the agency of original jurisdiction. As this appeal was certified to the Board in August 2012, the previous versions of the regulations including references to DSM-IV apply. 

In addition to evidence regarding the Veteran's symptomatology and its impact on his social and occupational functioning, a Global Assessment of Functioning ("GAF") score is another component considered to determine the entire disability picture for the Veteran. The GAF score is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness" from 0 to 100, with 100 representing superior functioning in a wide range of activities and no psychiatric symptoms. Carpenter v. Brown, 8 Vet. App. 240, 242 (1995) (quoting DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994)). 

Higher GAF scores denote increased overall functioning of the individual. For example, a GAF score of 51 to 60 represents "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks); or moderate difficulty in social, occupational, or school functioning, (e.g., few friends, conflicts with peers or co-workers)." DSM-IV at 46-47. Lower scores are indicative of greater symptoms and decreasing functionality of the individual. Specifically, a GAF score of 41 to 50 illustrates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting); or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Id. 

While an examiner's classification of the level of psychiatric impairment at the moment of examination, by words or by a GAF score, is to be considered, it is not determinative of the percentage VA disability rating to be assigned; the percentage evaluation is to be based on all the evidence that bears on occupational and social impairment. See generally 38 C.F.R. § 4.126; VAOPGCPREC 10-95.

That being the relevant law to the Veteran's current claim, the Board notes that the Veteran's PTSD was rated as 30 percent disabling beginning on an after March 12, 2009. The Veteran seeks a higher rating for his PTSD, due in part to reoccurring panic attacks and difficulty maintaining social relationships. See September 2016 Appellate Brief. After a careful review of the record, the Board finds the evidence is consistent with an initial 50 percent rating for PTSD throughout the entire appeal period, effective March 12, 2009. 38 C.F.R. § 4.7. However, the Board finds no evidence which would warrant an initial rating of 70 percent, or higher, for the Veteran's PTSD during the period on appeal. All evidence of record has been reviewed and considered, and the relevant evidence is summarized below. 

Entitlement to an initial disability evaluation in excess of 30 percent disabling for PTSD, beginning on and after March 12, 2009:

In considering the evidence of record under the laws and regulations as set forth above, the Board concludes that an initial 50 percent evaluation for PTSD is warranted beginning on and after March 12, 2009, under Diagnostic Code 9411. 38 C.F.R. § 4.7. Certain reported signs and symptoms are indicative of the 50 percent rating criteria. See 38 C.F.R. § 4.130. The Board has also considered additional, similar symptomatology not specifically addressed in the 50 percent criteria under the General Rating Formula. See again Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). 

As noted above, the Veteran was awarded service connection for his PTSD and granted an initial disability rating of 10 percent, effective October 1, 2005. In a subsequent rating decision, the RO assigned a 30 percent initial disability rating, with an effective date of March 12, 2009. The Veteran currently seeks a higher initial rating, arguing he suffers from "frequent panic attacks," which occur on average two to three times per week. See August 2016 Statement from Veteran. The Veteran describes physical side-effects from these panic attacks, including sweating, increased heart rate, and "an overwhelming feeling of vulnerability." Additionally, the Veteran's representative argues that a 50 percent disability rating is warranted in light of the Veteran's difficulty in establishing and maintaining relationships with family, friends, and co-workers. See August 2016 Appellant Brief. 

In addition to this lay evidence, the Board finds the objective medical evidence is indicative of a 50 percent disability rating. Specifically, the clinical evidence of record documents signs and symptoms of social isolation, disturbances of mood and motivation, difficulty in establishing and maintaining effective work and social relationships, and a flattened affect. For example, during a March 2009 initial psychiatric evaluation at the Decatur, Alabama VA medical center, the Veteran reported difficulties between himself and his then girlfriend. It was noted that the Veteran felt resentment over certain aspects of the relationship, due to his past "hardships." Although the Veteran was counseled on maintaining an objective "frame of reference" in communicating with his girlfriend, these problems persisted. In April 2009, the Veteran reported continued difficulty with his girlfriend, and said he has a pattern of finding it "hard to maintain relationships." During a subsequent appointment in May 2009, the Veteran was observed to be "mildly depressed," despite his subjective reports of an improved mood with medication. 

The records from the Veteran's private psychologist indicate the Veteran struggled to maintain relationships with his family and friends. For example, during a June 2012 appointment, the Veteran reported increasing strain within his family relationships. Specifically, the Veteran stated he feels frustrated his family does not help him during his times of physical sickness. He further described avoiding family interactions at times, as he anticipates conflict and "does not enjoy being around them." During a September 2012 appointment, the Veteran reported continued difficulties with his family, stating he does not feel as though his mother cares about is physical health. The Veteran further declared his mother's behavior had brought back difficult memories from his childhood, and he had begun to grow resentful for her actions towards him. These feelings of resentment were repeated during a June 2013 appointment. 

The Veteran's private psychologist continued to counsel him on improving his communication skills with family and friends. For example, in January 2013, the psychologist noted the Veteran did not have "good insight" into his social relationships. At a February 2013 appointment, the Veteran was alerted that his behavior towards a girlfriend was manipulative, and he was counseled on strategies for more direct communication. During an October 2013 appointment, the Veteran's psychologist observed the Veteran's limitations in effective communication have created a "renewed sense of sadness." The Veteran agreed with this assessment, and described feelings of fear and apprehension over his personal relationships with family and friends. 

These clinical records further document difficulties maintaining relationships in the workplace. During an October 2009 psychiatric evaluation at the Decatur, Alabama VA medical center, the Veteran described increasing stress at work. During a subsequent appointment in November 2009, the Veteran reported increasing difficulties at work, and stated he had put in a request to be moved. The Veteran further reported he was looking for a new job due to these workplace difficulties. Taken as a whole, these private treatment records indicate the Veteran's symptoms imposed moderate limitations on his ability to maintain relationships with his family, friends, and within the workplace. 

In addition to the Veteran's social limitation, the clinical evidence of record indicates the Veteran experiences disturbances of motivation and mood. In February and May 2010, the Veteran was administered the PCL-C, a diagnostic assessment of his PTSD symptoms. See Huntsville, Alabama VA Clinic Notes. The results of the Veteran's February 2010 assessment reveal he experienced moderate symptoms of social isolation and moderate loss of interest in daily activities and tasks. However, the results of the Veteran's May 2010 assessment document an increase in the frequency and severity of the Veteran's anxiety, irritability, and social avoidance. For example, the Veteran reported an increase in the frequency of panic attacks and an increased number of days where he was irritable and anxious. Moreover, during the May 2010 examination, the Veteran was objectively observed to have an "anxious and sad mood" with a "stressed affect."

A June 2010 mental health note from the Huntsville, Alabama VA medical clinic notes the Veteran expressed feelings of "vulnerability" over his health and personal relationships. The examiner observed the Veteran was visibly anxious and exhibited a depressed mood. During a January 2011 psychological consultation at the Augusta VA medical center, the Veteran reported depression, episodes of tearful "breakdowns," with difficulty composing himself. The Veteran alleged his "unmet expectations combined with his unsatisfactory progress [in] personal relationships" has been hard for him emotionally. 

Furthermore, a review of the Veteran's private psychological treatment records shows he consistently reported feelings of "vulnerability," "anxiety," "fearfulness," and "anger" over his physical health and longevity. During a June 2012 appointment, the Veteran described how a recent health scare had made him feel "defeated" and "hopeless" over his future and ability to maintain independence. During an October 2012 appointment, the private psychologist observed the Veteran had a "flat affect" as he discussed worsening physical difficulties. In a March 2013 examination, the private psychologist counseled the Veteran on his need to control his anger and irritability regarding a recent conflict with the VA hospital. 

Despite counseling, subsequent treatment records indicate the Veteran continued to experience mood liability, characterized by periods of panic, anxiety, and irritability. During a March 2014 examination with his private psychologist, the Veteran reported he was experiencing episodes of nighttime panic, where he is awoken in the middle of the night in a state of anxiety. He expressed feeling most vulnerable during the nighttime, and is therefore reluctant to go to bed. The Veteran stated he was sleeping approximately three to four hours a night on average. In April 2014, the Veteran expressed increasing anxiety over his health, and indicated that he was questioning the benefits of his personal relationships. He stated he was concerned over his long-term health, and did not want to have to rely on the people in his life, whom he does not fully trust. The Board finds the Veteran's disturbances of mood and motivation are consistent with an initial 50 percent disability rating.

The Board finds the Veteran's reports of panic attacks, occurring more than once per week, are supported by the medical evidence of record. For example, during a March 2009 psychiatric evaluation at the Decatur, Alabama VA medical center, the Veteran reported a history of "violent and vivid dreams" which have been ongoing for the past four to five months. In August 2009, the Veteran described reoccurring dreams where he is "without control" over particular situations and "feels helpless." See Decatur, Alabama VA Clinic Note. During a subsequent assessment, in February 2010, the Veteran reported increasing frequency of these nighttime panic episodes, and states he is awoken by night sweats. See Huntsville, Alabama VA Clinic Note.

By August 2011, the Veteran began experiencing more frequent symptoms of panic and depressed moods. See Private Psychological Treatment Notes. Following a hospitalization for an infection in February 2012, the Veteran reported he was developing more frequent symptoms of anxiety and fear. Specifically, the Veteran worried about the possibility he will become dependent on others and will be less able to enjoy the freedoms he does now. Later counseling notes document these symptoms of panic and anxiety continued. For example, in April 2013, the Veteran reported an increase in the severity of his anger and his anxiety. He explained these feeling were the brought about by inter-personal difficulties in his current relationship and difficulty dealing with the personalities of the students he was teaching at the time. During an August 2013 appointment, the Veteran described a panic attack, "which caught him off guard," as it happened in public, after hearing another person discuss a recent traumatic event. 

In December 2013, the Veteran's private psychologist observed the Veteran was experiencing an increase in "anticipatory panic," brought on by his heath and strained personal relationships. The Veteran additionally noted he had experienced almost daily panic attacks in the preceding month. The psychologist observed the increase in the Veteran's panic attacks were due to his increased concerns over his health, fear of diminished capabilities and independence, and a resentment over the physical abilities of others. During an August 2014 appointment, the psychologist reported the Veteran suffered a panic attack in the office after discussing his health problems. 

Based upon this review of the record, the Board finds the Veteran's symptoms and limitations are indicative of a 50 percent disability rating beginning on and after March 12, 2009. As discussed above, the Veteran's early treatment records document persistent feelings of "panic" and "anger," despite medication and counseling. The Veteran further struggled to effectively maintain and establish relationships with his family, friends, and co-workers. As such, the Board finds the lay and medical evidence of record is consistent with an initial disability rating of 50 percent. 

In reaching this conclusion, the Board is aware of evidence within the record which suggests the Veteran's symptoms were consistent with an initial rating of 30 percent. Specifically, the Board notes the November 2013 VA examiner opined the Veteran's overall PTSD symptoms were consistent with a 30 percent disability rating, as the Veteran experienced a "mild to moderate [level of] impairment." However, the Board finds the examiner's clinical observations of the Veteran are more consistent with a 50 percent disability rating. For example, the examiner observed that although the Veteran was "cooperative" throughout the examination, he was also confused and exhibited a "restricted" affect. The examiner further noted the Veteran's dysthymic mood, and reported his concentration, attention, and memory were mildly impaired. In addition to these objective findings, the Veteran reported an increase in his panic attacks, both during the day and nighttime. These increased symptoms of anxiety were further causing the Veteran to isolate from friends in family. Therefore, the Board finds that both the examiner's clinical observations, and the Veteran's subjective symptoms, are more consistent with a 50 percent disability rating. 

However, while the Board finds the totality of the evidence shows the Veteran's symptoms are consistent with a 50 percent disability rating, beginning on and after March 12, 2009, the Board finds no credible evidence which suggests the Veteran's symptoms meet the criteria for a higher evaluation. Specifically, the Board finds no evidence which indicates the Veteran's PTSD has resulted in an occupational impairment contemplated by the 70 percent disabling rating. 

The medical and lay evidence of record is not indicative of someone with psychiatric symptomatology causing occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, required for the 70 percent rating. 38 C.F.R. § 4.130. 
Although there were clearly deficiencies in the Veteran's mood and ability to maintain inter-personal relationships, the whole of the evidence of record indicates that a rating at 70 percent is not for assignment. In making this determination, the Board has also considered additional, similar symptomatology not specifically addressed in the criteria under the General Rating Formula. See again Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). 

Despite the intermittent inter-personal work issues discussed above, there is no evidence the Veteran was unable to maintain a job or was unable to meet the demands of his employment. For example, during a November 2011 appointment with his private psychologist, the Veteran reported he was working "as much as his health would allow," and further expressed gratitude for the "flexibility" offered by his work situation. During a subsequent appointment, in September 2012, the Veteran stated he had received approval to teach an electronics course at a local school and "expressed" excitement over this new opportunity. By February 2013, the Veteran reported he was offered a promotion at work, and described excitement over this recognition. In September 2013, the Veteran reporting things were going well at work, and that he was planning to do some additional volunteer work. Later, during a December 2013 appointment, the Veteran indicated that things continued to "go well at work," and that he continues to "enjoy working with electronics." 

The Veteran was able to return to his old job in the summer of 2014. During a July 2014 appointment with his private psychologist, the Veteran reported he was "initially anxious" about his return, but now "feels better" after learning there have been staffing changes. He continued that he is now beginning to look forward to, and be excited about, returning to his old employer. As such, the Board finds no evidence which indicates the Veteran experiences occupational impairment consistent with a 70 percent disability rating. 

In terms of the Veteran's difficulty with inter-personal relationships, the Board notes that the Veteran was able to make progress in his relationships with family and friends. For example, in July 2009, the Veteran enrolled in a mentoring program, where he would serve as a "Big Brother" to a younger individual. See VA Clinic Note Decatur, Alabama. The Veteran was able to reconnect with friends, and in May 2014 he reported these friends were helping him make a sailboat handicap accessible. See Private Psychological Treatment Notes. In November 2014, the Veteran reported to his private psychologist that he was able to visit with his family for the first time since his accident in 2007. The Veteran said the visit was successful, and that he felt "better" and more "relaxed."

Furthermore, general observations of the Veteran throughout the period on appeal do not suggest he ever struggled to maintain or neglected his personal hygiene. Rather, he was consistently observed to be appropriately dressed and "neatly groomed." For example, during an appointment in March 2010, the Veteran's a VA psychologist observed he was "appropriately dressed, made good eye contact...[and had] good general hygiene." See March 2010 VVA Psychiatry Note. Similar observations were made during a May 2010 VA psychiatry appointment. Moreover, throughout the period on appeal, the Veteran was able to independently care for himself and his personal hygiene. This includes the Veteran moving into a new house, which was made handicapped accessible. See VVA August 2009 Mental Health Note. 

Lastly, the Board notes that the assignment of GAF scores throughout the period on appeal are consistent with a 50 percent disability rating. Specifically, the Veteran's overall functioning was assessed with GAF scores ranging from 55 to 62, which are indicative of moderate symptoms and limitations. See VA Clinic Notes Decatur and Huntsville, Alabama; See also November 2013 VA Examination. While these scores and descriptive terms are not dispositive of the rating that should be assigned, they are nonetheless probative evidence to assist in making this important decision. 38 C.F.R. §§ 4.2, 4.6. 

While the Board acknowledges that the Veteran experienced a few severe interpersonal symptoms during the period on appeal, the overall evidence does not suggest the Veteran's symptoms, even when considered at their worst, caused occupational and social impairment with deficiencies in most areas for the Veteran, to which a 70 percent disability requirement refers. See Vazquez-Claudio, 713 F.3d at 118 (the Veteran's psychiatric symptoms must cause the level of occupational and social impairment specified in the General Rating Formula). The evidence of record discussed in detail above weighs more heavily against a 70 percent rating. Overall, beginning on and after March 12, 2009, the Veteran's level of occupational and social impairment is more than adequately reflected in the 50 percent rating currently assigned. 38 C.F.R. § 4.3. 

Accordingly, the Board finds that the evidence supports an initial disability rating of 50 percent, but no higher, for the Veteran's service-connected PTSD, beginning on and after March 12, 2009. 38 C.F.R. § 4.3. It is not necessary to "stage" the Veteran's ratings any further than discussed above, as the Veteran's PTSD symptoms have been consistent at the 50 percent level for the respective time period delineated by the Board in the present decision. Fenderson, 12 Vet. App. at 126. Therefore, from March 12, 2009 to the present, the Board concludes the evidence supports an initial 50 percent rating, but no higher, for the Veteran's service-connected PTSD. 38 C.F.R. § 4.3. 

Extraschedular Consideration:

As the Court has explained in Thun v. Peake, 22 Vet. App. 111, 115-116 (2008), a "determination of whether a claimant is entitled to an extraschedular rating under § 3.321(b)(1) is a three-step inquiry." If the RO or Board determines that (1) the schedular evaluation does not contemplate the claimant's level of disability and symptomatology, and (2) the disability picture exhibits other related factors such as marked interference with employment or frequent periods of hospitalization, then (3) the case must be referred to an authorized official to determine whether, to accord justice, an extra-schedular rating is warranted. Id. See also 38 C.F.R. § 3.321(b)(1). Neither the RO nor the Board is permitted to assign an extraschedular rating in the first instance; rather the matter must initially be referred to those officials who possess the delegated authority to assign such a rating. See Anderson v. Shinseki, 22 Vet. App. 423, 427-8 (2009); Floyd v. Brown, 9 Vet. App. 88, 96-97 (1996). 

The threshold factor for extraschedular consideration is a finding that the evidence before the VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. See Thun v. Peake, 22 Vet. App. 111 (2008). In this regard, there must be a comparison between the level of severity and symptomatology of the claimant's service- connected disability with the established criteria found in the rating schedule for that disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule and the assigned schedular evaluation is therefore adequate, and no extraschedular referral is required. Id., see also VAOGCPREC 6-96 (Aug. 16, 1996). Otherwise, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the VA must determine whether the claimant's exceptional disability picture exhibits other related factors, such as those provided by the extraschedular regulation (38 C.F.R. § 3.321(b)(1) ) as "governing norms" (which include marked interference with employment and frequent periods of hospitalization).

With regard to the PTSD issue on appeal, there is no evidence of exceptional or unusual circumstances to warrant referral for extraschedular consideration. 38 C.F.R. § 3.321(b)(1). The Board finds that the Veteran's psychiatric symptomatology from his service-connected PTSD is fully addressed by the rating criteria under which such disability is rated. Specifically, the General Rating Formula for Mental Disorders reasonably describes the Veteran's disability level and symptomatology with contemplation of the relative degree of occupational and social impairment. The Veteran does not have any PTSD symptoms or effects which are not provided for in the Rating Schedule. 

In this respect, the General Rating Formula for Mental Disorders is essentially limitless with regard to the psychiatric factors and symptoms that may be considered in assigning a particular schedular rating, using the term "such as" for those symptoms not specifically listed. It is also considers the use of psychiatric medication. Furthermore, the holding in Mauerhan stresses that all evidence must be considered in justifying a particular rating. The Board has considered the additional psychiatric symptoms the Veteran exhibits, such as avoidance, isolation, irritability, vulnerability/hypervigilance, panic attacks, and nightmares, among others. Because the rating criteria reasonably describe the claimant's disability level and symptomatology for his PTSD, no referral is required. Thun v. Peake, 22 Vet. App. 111, 115-116 (2008); VAOPGCPREC 6-96. The evidence does not show anything unique or unusual about the Veteran's PTSD disability that would render the schedular criteria inadequate. 

Therefore, because the threshold step of Thun is not met, and the Veteran's service-connected PTSD disability picture is contemplated by the Rating Schedule, it is not necessary to consider the second step of whether the claimant has an exceptional disability picture that exhibits other related factors identified in the regulations as "governing norms," such frequent periods of hospitalization. 22 Vet. App. At 116. See also 38 C.F.R. § 3.21(b)(1). 

Finally, the Board notes that under the Federal Circuit Court's recent holding in the case of Johnson v. McDonald, 762 F.3d 1362, 1365-66 (Fed. Cir. 2014), a veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. However, in the instant appeal, as the decision does not involve evaluation of multiple service-connected disabilities, further discussion of Johnson is not necessary. Yancy v. McDonald, 27 Vet. App. 484 (2016).

Based on the foregoing, the Board finds that the requirements for referral for an extraschedular evaluation for the Veteran's service connected PTSD disability under the provisions of 38 C.F.R. § 3.21(b)(1) have not been met. Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218 (1995); Thun v. Peake, 22 Vet. App. 111 (2008). 

ORDER

Effective March 12, 2009, an increased initial 50 percent rating, but n greater, is granted for the Veteran's PTSD, subject to the laws and regulations governing the payment of VA compensation. 

______________________________________________
DAVID L. WIGHT
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs