﻿Citation Nr: 18115443
Decision Date: 07/03/18 Archive Date: 07/02/18

DOCKET NO. 12-07 184
DATE: July 3, 2018
ORDER
Entitlement to an initial rating in excess of 30 percent for ischemic heart disease (IHD) is denied.
Entitlement to an initial rating in excess of 30 percent for posttraumatic stress disorder (PTSD) is denied.
REMANDED
Entitlement to a total disability evaluation based on individual unemployability due to service-connected disabilities (TDIU) is remanded.
FINDINGS OF FACT
1. The Veteran’s IHD demonstrated a workload of greater than 7 METs, left ventricular ejection fraction of 55 percent, and treatment with continuous medications, but did not demonstrate with more than one episode of congestive heart failure, workload of 3 to 5 METs with accompanying dyspnea, fatigue, angina, dizziness, syncope, or left ventricular ejection fraction of 30 to 50 percent. 
2. The Veteran’s PTSD is manifested by occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, due to symptoms such as: chronic sleep impairment, nightmares, flashbacks, intermittent anxiety, nervousness, and irritability, and occasional mood disturbances; without impaired judgment, panic attacks more than once a week, motivation disturbances, or difficulties with social relationships.
CONCLUSIONS OF LAW
1. The criteria for an initial rating in excess of 30 percent for ischemic heart disease have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.104, Diagnostic Code 7005 (2017). 
2. The criteria for an initial rating in excess of 30 percent for posttraumatic stress disorder have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.130, Diagnostic Code 9411 (2017). 
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The Veteran had active service from February 1968 to February 1970.
During the pendency of the appeal, a June 2015 rating decision increased the rating for the Veteran’s IHD to 30 percent effective July 7, 2008. Since this evaluation is not the maximum available benefit and the claimant has not withdrawn the appeal, the issue remains in appeal status. See AB v. Brown, 6 Vet. App. 35, 38 (1993) (where a claimant has filed a NOD as to an RO decision assigning a particular rating, a subsequent RO decision assigning a higher rating, but less than the maximum available benefit, does not abrogate the pending appeal). 
The case was remanded in August 2016 for evidentiary development and to conduct new medical examinations.
Increased Rating
Disability ratings are determined by applying criteria set forth in VA’s Schedule for Rating Disabilities. Ratings are based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. See 38 U.S.C. § 1155; 38 C.F.R. § 4.1. Where there is a question as to which of two evaluations should be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. See 38 C.F.R. § 4.7.
For claims for increased ratings which arise out of an initial grant of service connection, the Board must consider the application of “staged” ratings for different periods from the filing of the claim forward, if the evidence suggests that such a rating would be appropriate. See Fenderson v. West, 12 Vet. App. 119 (1999); see also Hart v. Mansfield, 21 Vet. App. 505, 509-10 (2007) (holding that staged ratings may be warranted in increased rating claims).
1. Entitlement to an initial rating in excess of 30 percent for ischemic heart disease (IHD)
The Veteran’s IHD has been evaluated as 30 percent disabling since July 7, 2008, under the Schedule of Ratings for the cardiovascular system. 38 C.F.R. § 4.104, Diagnostic Code (DC) 7005. 
Under DC 7005, a 10 percent rating is assigned for a workload of greater than 7 METs but not greater than 10 METs results in dyspnea, fatigue, angina, dizziness, or syncope, or; continuous medication required. A 30 percent rating is assigned for a workload of greater than 5 METs but not greater than 7 METs results in dyspnea, fatigue, angina, dizziness, or syncope or evidence of cardiac hypertrophy or dilatation on electrocardiogram, echocardiogram, or x-ray. A 60 percent rating is assigned for more than one episode of acute congestive heart failure in the past year, or; workload of greater than 3 METs but not greater than 5 METs results in dyspnea, fatigue, angina, dizziness, or syncope, or; left ventricular dysfunction with an ejection fraction of 30 to 50 percent. A 100 percent rating is assigned for chronic congestive heart failure, or; workload of 3 METs or less results in dyspnea, fatigue, angina, dizziness, or syncope, or; left ventricular dysfunction with an ejection fraction of less than 30 percent. 38 C.F.R. § 4.104, DC 7005. 
One MET (metabolic equivalent) is the energy cost of standing quietly at rest and represents an oxygen uptake of 3.5 milliliters per kilogram of body weight per minute. When the level of METs at which dyspnea, fatigue, angina, dizziness, or syncope develops is required for evaluation, and a laboratory determination of METs by exercise testing cannot be done for medical reasons, an estimation by a medical examiner of the level of activity (expressed in METs and supported by specific examples, such as slow stair climbing or shoveling snow) that results in dyspnea, fatigue, angina, dizziness, or syncope may be used.
Private treatment records indicate the Veteran demonstrated ischemic heart disease in May 2006 and myocardial infarctions in April 2007.
At the March 2012 VA examination, the examiner noted the Veteran takes continuous medication to treat his cardiac conditions. The Veteran denied any systems of fatigue, angina, dyspnea, dizziness, or syncope after physical exertion. The METS test based on the Veteran’s responses showed that he did not experience these symptoms with any level of physical activity, and therefore the examiner did not select a METs category. A May 2015 addendum opinion stated that the Veteran’s ejection fraction was normal, and that, “when asked about the MET level,” he denied experiencing fatigue, angina, dyspnea, dizziness, or syncope with any level of physical activity.
At the December 2017 VA examination, the Veteran denied angina, syncope, or fatigue symptoms since the May 2015 VA examination. He also reported taking continuous multiple medications for treatment. An echocardiogram indicated left ventricular ejection fraction of 55 percent. The examiner noted the Veteran denied having congestive heart failure. The Veteran performed physical activity with a workload of 10.1 METs. The examiner noted the Veteran’s IHD had no functional impact on the Veteran’s ability to work.
VA and private treatment records dated between 2007 and the present are consistent with the VA examiner’s findings, and show no indication of a workload of less than 7 METS, ejection fraction below 55 percent, or dyspnea, fatigue, angina, dizziness, or syncope.
The Veteran’s IHD demonstrated no more than a workload of 10 METs and left ventricular ejection fraction of 55 percent, with continuous medications, throughout the period on appeal. A higher rating is not warranted because the Veteran’s IHD did not demonstrate with more than one episode of congestive heart failure, workload of 3 to 5 METs with accompanying dyspnea, fatigue, angina, dizziness, or syncope, or left ventricular ejection fraction of 30 to 50 percent. 
Given these facts, the Board finds that an initial rating of 30 percent adequately reflects the Veteran’s IHD during the relevant period and a higher initial rating is denied. 
2. Entitlement to an initial rating in excess of 30 percent for posttraumatic stress disorder (PTSD)
The Veteran’s PTSD is evaluated as 30 percent disabling under the General Rating Formula for Mental Disorders. See 38 C.F.R. § 4.130, DC 9411.
Under DC 9411:
a 30 percent evaluation is warranted when there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events); 
a 50 percent evaluation is warranted when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships; 
a 70 percent evaluation is warranted when there is occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); and the inability to establish and maintain effective relationships; and 
a 100 percent evaluation is warranted if there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name.
38 C.F.R. § 4.130, DC 9411.
The symptoms associated with each rating in 38 C.F.R. § 4.130 are not intended to constitute an exhaustive list; rather, they serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. See Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). Thus, the evidence considered in determining the level of impairment under 38 C.F.R. § 4.130 is not restricted to the symptoms provided in the DCs. See id. VA must consider all symptoms of a claimant’s disorder that affect his or her occupational and social impairment. See id. at 443. If the evidence demonstrates that a claimant has symptoms or effects that cause occupational or social impairment equivalent to what would be caused by the symptoms listed in the DC, the appropriate, equivalent rating will be assigned. Id. In this regard, VA shall consider the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the claimant’s capacity for adjustment during periods of remission. 38 C.F.R. § 4.126. Although VA considers the level of social impairment, it does not assign an evaluation based solely on social impairment. Id. VA must consider all the claimant’s symptoms and resulting functional impairment in assigning the appropriate rating, and will not rely solely on the examiner’s assessment of the level of disability at the moment of examination. See id.
The Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5) is for application as this appeal was pending before the AOJ on August 4, 2014. 38 C.F.R. §§ 4.125, 4.130; 79 Fed. Reg. 45093, 45099 (effective date provisions); 80 Fed. Reg. 53, 14308 (March 19, 2015) (adopting the final rule recognizing that the DSM-IV was rendered obsolete by the publication of the DSM-5 in May 2013). “Given that the DSM-5 abandoned the GAF scale and that VA has formally adopted the DSM-5, the Court holds that the Board errs when it uses GAF scores to assign a psychiatric rating in cases where the DSM-5 applies . . . [t]he Board should not use such evidence at all when assigning a psychiatric rating in cases where the DSM-5 applies.” Golden v. Shulkin, 29 Vet. App. 221,225 (2018).
At the October 2007 VA examination, the Veteran recalled witnessing the death of his friend during his overseas deployment in Vietnam. He reported trouble sleeping, including nightmares, at least three times a week. He indicated a good relationship with his wife and children. He demonstrated impoverished speech, guarded attitude, constricted affect, a good mood, and intact attention with normal memory. He was oriented to person, time and place, but scarce thought processes and content. The Veteran reported his sleep impairment interferes with his daily activities by causing low energy levels the following day. He denied hallucinations, inappropriate behavior, obsessive/ritualistic behavior, panic attacks, or suicidal/homicidal thoughts. He reported good impulse control, no episodes of violence, and an ability to maintain good hygiene. He reported no problems with activities of daily living. The Veteran indicated he had recurring distressing dreams about his tour in Vietnam, including his friend’s death, and that he had difficulty falling or staying asleep. The examiner assessed the Veteran with nightmare disorder, but not PTSD, noting the Veteran met the stressor criteria for PTSD but that he did not fulfill the overall symptom criteria for a full diagnosis. 
VA treatment records indicate the Veteran was diagnosed with PTSD, delayed onset, in July 2006. Counseling records from 2006 to 2009 indicate the Veteran continuously reported sleep impairment, including difficulty falling asleep and nightmares, and flashbacks as the main symptoms of his disability. Although he continuously denied suicidal ideation, he reported episodes of wishing he were dead. He met with his treating counselor every 3 to 4 months for several years. During this time he reported one instance of mood disturbances and difficulty concentrating. The Veteran managed his symptoms with medication.
VA treatment records from 2010 to 2011 indicate the Veteran reported episodes of intense anxiety, hyperarousal, and isolation. His chief complaints continued to be sleep impairment with nightmares, and flashbacks. He continued to deny suicidal ideation. By 2013 and 2014, counseling records show the Veteran experienced mild symptoms of PTSD, noting occasional difficulty falling asleep. 
At the May 2015 VA examination, the Veteran reported nervousness, irritability, and having nightmares. The examiner noted the Veteran’s diagnosis of PTSD by history and that the Veteran endorsed anxiety during the examination. The examiner opined the Veteran’s mental condition was formally diagnosed, but his symptoms were not severe enough either to interfere with occupational and social functioning or to require continuous medication.
At the December 2017 VA examination, the examiner noted that the Veteran’s last mental health appointment was March 2014, and that the Veteran no longer treated his symptoms with medications. The Veteran reported anxiety, and nightmares 1 to 2 times a week. He continued to demonstrate chronic sleep impairment. The examiner opined the Veteran had mild PTSD, with no current psychiatric medications prescribed, that would only mildly affect his occupational functioning. 
Throughout the appeal period, the Veteran’s PTSD was manifested by no more than occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, due to symptoms such as: chronic sleep impairment, nightmares, flashbacks, intermittent anxiety, nervousness, and irritability, and occasional mood disturbances. A higher rating is not warranted because the Veteran’s PTSD did not cause symptoms resulting in occupational and social impairment with reduced reliability and productivity, such as impaired judgment, panic attacks more than once a week, motivation disturbances, or difficulties with social relationships. He had a good relationship with his wife and children, and stopped counseling sessions and medications after March 2014.
Given these facts, the Board finds that a 30 percent rating adequately reflects the Veteran’s PTSD during the relevant period and a higher rating is denied.
REASONS FOR REMAND
1. Entitlement to TDIU is remanded.
The Veteran’s representative contends the Veteran is totally disabled due to his service-connected disabilities.
A total rating based on unemployability due to service-connected disabilities may be granted if the service-connected disabilities preclude the Veteran from obtaining or maintaining substantially gainful employment consistent with his or her education and occupational experience. 38 C.F.R. §§ 3.340, 3.341, 4.16.
If there is only one such disability, it must be rated at 60 percent or more, and if there are two or more disabilities, there shall be at least one disability rated at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent. 38 C.F.R. § 4.16 (a). For those Veterans who fail to meet the percentage standards set forth in 38 C.F.R. § 4.16 (a), total disability ratings for compensation may nevertheless be assigned when it is found that the service-connected disabilities are sufficient to produce unemployability; such cases should be referred to the Director, Compensation Service, for extraschedular consideration. 38 C.F.R. § 4.16 (b).
The combined rating for the Veteran’s service-connected disabilities is 50 percent, and thus the initial threshold for entitlement to TDIU are not met. However, 4.16(b) may be for application.
The Veteran contends he receives social security disability insurance (SSDI) from the Social Security Administration (SSA) benefits because of his heart condition. In addition, he contends that the combined effect of his service-connected disabilities renders him unable to obtain and/or maintain gainful employment. However, no SSA records have been associated with the claims file. As such, the Board must remand the claim so that the AOJ may make reasonable efforts to obtain any outstanding SSA records that are relevant to mental health. Golz v. Shinseki, 590 F.3d 1317, 1323 (2010).
The matter is REMANDED for the following action:
1. Contact the Social Security Administration (SSA) and obtain all medical records associated with the disability determination made by that agency. Associate all records with the claims file, and if no records can be found after an exhaustive search, so annotate the claims file.
2. Readjudicate the TDIU claim, referring the claim to the Director of Compensation Service if appropriate, for consideration of entitlement to TDIU on an extraschedular basis.
The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). This claim must be afforded expeditious treatment. The law requires that all claims remanded by the Board of Veterans’ Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).
 
LAURA E. COLLINS
Acting Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD Anwar, Shazia N.