﻿Citation Nr: 18124201
Decision Date: 08/07/18 Archive Date: 08/06/18

DOCKET NO. 17-57 675
DATE: August 7, 2018
ORDER
Entitlement to initial rating in excess of 70 percent for major depressive disorder (MDD) is denied.
REMANDED
Entitlement to a total disability rating based on individual unemployability (TDIU) is remanded.
REFERRED
The issue of entitlement to an earlier effective date prior to August 2, 2010 for the grant of service connection for MDD was raised in a document titled “other” dated on August 14, 2017 and is referred to the Agency of Original Jurisdiction (AOJ) for adjudication.
FINDING OF FACT
For the entire period on appeal, the Veteran’s MDD does not more nearly approximate total occupational and social impairment. 
CONCLUSION OF LAW
For the entire period on appeal, the criteria for rating higher than 70 percent for MDD have not been met or approximated. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.130, Diagnostic Code (DC) 9434 (2017). 
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The Veteran served on active duty from April 1974 to April 1977.
In March 2018, the Board remanded the Veteran’s service connection claims for hypertension; kidney disorder; liver disorder; disability manifested by pain in the ankles, knees, shoulders, low back, and neck – to include arthritis and fibromyalgia; and, boutonniere deformity. The requested development regarding these issues have not been completed yet, and those will be decided by the Board at a later time. 
The Board has limited the discussion below to the relevant evidence required to support its findings of fact and conclusions of law, as well as to the specific contentions regarding the case as raised directly by the Veteran and those reasonably raised by the record. See Doucette v. Shulkin, 28 Vet. App. 366, 69-70 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record); Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015).
Increased Rating for MDD
A. Applicable Law
The criteria for rating psychiatric disabilities, other than eating disorders, are set forth in the General Rating Formula (General Rating Formula) for Mental Disorders. See 38 C.F.R. § 4.130.
The RO has rated the Veteran’s major depressive disorder as 70 percent disabling pursuant to DC 9434 of the Rating Formula. See 38 C.F.R. § 4.130, DC 9434 (2017).
By way of procedural history, the RO denied the Veteran’s claim in a January 2011 rating decision. Thereafter, by a May 2014, the RO granted a 50 percent disability rating, effective August 2, 2010, the date of the Veteran’s original service connection claim. Subsequently, in an October 2017 rating decision, the RO increased the rating to 70 percent, effective from the beginning of the claim. The Veteran asserts that his service-connected psychiatric disorder warrants a higher rating than 70 percent. 
Under the General Rating Formula, a 70 percent rating is warranted if the evidence establishes there is occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); and/or inability to establish and maintain effective relationships. 38 C.F.R. § 4.130.
A 100 percent rating (total occupational and social impairment) is warranted due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id.
When it is not possible to separate the effects of the service-connected disability from a nonservice-connected disability, such signs and symptoms shall be attributed to the service-connected disability. See 38 C.F.R. § 3.102 (2017); Mittleider v. West, 11 Vet. App. 181 (1998) citing Mitchem v. Brown, 9 Vet. App. 136, 140 (1996) (the Board is precluded from differentiating between symptomatology attributed to a nonservice-connected disability and a service-connected disability in the absence of medical evidence which does so).
When determining the appropriate disability evaluation to assign, the Board’s consideration includes the veteran’s symptoms, but it must also make findings as to how those symptoms impact a veteran’s occupational and social impairment. Vazquez-Claudio v. Shinseki, 713 F.3d 112 (Fed. Cir. 2013). The use of the term “such as” in the rating criteria demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Mauerhan v. Principi, 16 Vet. App. 436 (2002). Thus, the Board need not find the presence of all, most, or even some, of the enumerated symptoms to award a specific rating. Id. at 442. Nevertheless, all ratings in the general rating formula are also associated with objectively observable symptomatology and the plain language of the regulation makes it clear that a veteran’s impairment must be “due to” those symptoms; a veteran may only qualify for a given disability rating by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration. Vazquez-Claudio, 713 F.3d at 118. The Board recognizes that the Court in Mauerhan, 16 Vet. App. 436, stated that the symptoms listed in VA’s general Rating Formula for mental disorders is not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating; however, the Court further indicated that, without those examples, differentiating between rating evaluations would be extremely ambiguous.
In determining the level of impairment under 38 C.F.R. § 4.130, a rating specialist is not restricted to the symptoms provided under the diagnostic code, and should consider all symptoms which affect occupational and social impairment, including those identified in the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM-IV or DSM 5). See Mauerhan v. Principi, 16 Vet. App. 436 (2002). If the evidence demonstrates that a claimant suffers symptoms or effects that cause an occupational or social impairment equivalent to those listed in that diagnostic code, the appropriate, equivalent rating is assigned. See Mauerhan, 16 Vet. App. 436.
B. Rating Analysis
After a review of all the evidence, the Board finds that a rating in excess of 70 percent is not warranted for any period. The weight of the lay and medical evidence shows that for the entire period on appeal the Veteran’s MDD does not more nearly approximate total occupational and social impairment.
VA mental health treatment records dated in May 2010 indicate that the Veteran reported feeling frustrated and anxious about his situation. It was noted that he had no work and they were losing the place where they were staying. His mood was described as “fair” with no mood swings, his thought processes were clear, and the Veteran denied suicidal or homicidal ideation and delusions or hallucinations. The Veteran further reported that he went “fairly regularly” to church and socialized a little. It was also noted that he took care of home responsibilities and self-care. Upon mental status examination, it was noted that the Veteran was casually and appropriately dressed, with no distractibility. His speech was logical, affect was anxious/constricted/good congruous reactivity, and his thought process was goal directed, anxious, and sad about his physical health and inability to work. Cognition and insight were within normal limits. The mental health professional rendered a diagnosis of major depressive disorder without psychotic features in remission.
Additional VA mental health treatment records dated in October 2010 show that the Veteran reported being stressed due to financial and health problems. It was noted that he felt worried and sad, and reported low motivation, but his mood was described as “fair.” The Veteran denied having mood swings, his thought processes were clear, and his sleep was fair with Vicodin. The Veteran denied suicidal or homicidal ideation and delusions or hallucinations. Upon mental status examination, it was noted that the Veteran was casually and appropriately dressed, with no distractibility. His speech was logical, affect was anxious/constricted/good congruous reactivity, and his thought process was goal directed, anxious, and sad about his physical health and inability to work. Cognition and insight were within normal limits. It was also noted that he took care of home responsibilities and self-care. The mental health professional continued a diagnosis of major depressive disorder without psychotic features in remission. Additional treatment notes in 2010 and 2011 show that the Veteran was regularly attending mental health support group at the VA. 
The Veteran underwent a VA examination for mental health in March 2014, at which time the examiner rendered a diagnosis of major depressive disorder, recurrent, moderate. 
In terms of social impairment, the Veteran reported that he was married to his second spouse, and described his relationship with her as “okay,” though indicated that she was his “best friend.” He had two children from his previous marriage, but had no relationship with them. He further reported that he had no connection with his two brothers and sister. In terms of occupational impairment, it was noted that the Veteran was unemployed at the time, which he attributed to his medical and psychological problems. 
The examiner identified psychiatric symptoms of depressed mood; suspiciousness; panic attacks that occur less than weekly; depression affecting the ability to function independently, appropriately, and effectively; chronic sleep impairment; mild memory loss, such as forgetting names, directions, or recent events; flattened affect; impaired judgment; disturbances of motivation and mood; and, difficulty in establishing and maintaining effective work and social relationships. The examiner noted that the Veteran was able to manage his financial affairs. The examiner concluded that the Veteran’s psychiatric disorder resulted in occupational and social impairment with reduced reliability and productivity.
Subsequent VA treatment record dated in March 2015 indicate that the Veteran was last seen in June 2014. During this visit, the Veteran reported that his spouse was going blind, which was noted to be a major stressor along with his chronic pain. The Veteran reported that his anxiety and panic attacks were less manageable, his mood was low, and his sleep was disturbed by pain. He denied any suicidal or homicidal ideation and hallucinations or delusions. Additional VA treatment notes dated in May 2015 show that the Veteran was not doing well after the recent loss of his wife. He was struggling with grief, but denied any suicidal or homicidal ideation. 
In an affidavit dated in April 2016, the Veteran stated that due to his major depressive disorder, he was chronically fatigued and his memory caused him a lot of problems. He indicated that he required reminders to go places as well as constant reminders “to stay on topic of conversations or questions being asked.” He further noted that his depressive disorder resulted in his losing his previous job due to an altercation with his boss, and stated that he was unable to handle any type of stressful circumstances, including wok like settings. He described going into a “state of panic” when he was stressed, resulting in self-isolation to “remove” himself from the situation. He indicated that he was unable to be around crowds without feeling anxious and “spaced out,” and “ultimately not feeling well.” When around unfamiliar people, he reported distancing himself and feeling “very detached.” His daily routine included watching TV alone, and he stated that he was constantly worried about the future, which troubled his sleep at night. He also noted that due to his low energy, he did not like to participate in any physical activities and “don’t care for supervision.” He further noted, “when I become frustrated, I typically implode and am very quiet. I need to isolate myself as soon as this happens, otherwise, I become very irritable.” Lastly, he stated that he often felt like his mind was “somewhere else,” had a hard time paying attention, and express himself, especially when “it comes to [his] depressive disorder.” 
In support of his claim, the Veteran submitted an October 2016 private psychological assessment, in which the psychologist rendered a diagnosis of moderate-to-severe recurrent intractable major depression. The psychologist identified psychiatric symptoms of chronic fatigue, memory problems, inability to handle any type of circumstance, and concluded that these resulted in occupational and social impairment with deficiencies in most areas, such as family relations, judgment, thinking, and mood. 
On review, the Board finds that a rating in excess of 70 percent for MDD is not warranted. In terms of occupational impairment, the Board specifically considered the Veteran reports and his attorney’s arguments that he was fired from most jobs and was unable to work due to his service-connected MDD. In this regard, the Board remands the Veteran’s claim for entitlement to a TDIU below for further development per his December 2016 request, specifically due to the Veteran’s service-connected MDD. 
Nonetheless, the Veteran has not been totally socially and occupationally impaired. He has been found capable of managing his own financial affairs and has continuously appeared oriented on examinations. On mental status examinations, his concentration has been regarded as generally intact. His insight and judgment have not been impaired. He has presented to examinations adequately dressed and groomed. Moreover, he continuously denied suicidal and homicidal ideation. 
Total occupational and social impairment generally requires symptoms severe enough to severely distort the individual’s perception of reality, which is not shown by the record. Overall, the Veteran’s psychiatric symptoms, while severe, do not equate in severity, frequency, or duration to total occupational and social impairment, nor has he demonstrated a level of severity in symptomatology to approximate or equate to that in the symptoms listed for a 100 percent rating. The Board points out that the most recent VA examiner in 2014 concluded that the Veteran’s psychiatric disorder resulted in resulted in occupational and social impairment with reduced reliability and productivity, which is consistent with only a 50 rating, and the October 2016 private psychologist concluded that the Veteran’s psychiatric disability resulted in occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, consistent with his currently assigned 70 percent disability rating. 
In summary, the weight of the evidence is against finding total and occupational impairment, the criteria for a rating higher than 70 percent for the entire initial rating period; therefore, the appeal must be denied. 38 U.S.C. § 5107; 38 C.F.R. §§ 4.3, 4.7.
REASONS FOR REMAND
The issue of TDIU is remanded
The Board finds that a remand is necessary for further development of the TDIU claim. The issue of TDIU is remanded to the Agency of Original Jurisdiction for the appropriate development and initial adjudication. 
Entitlement to a TDIU is an element of all rating issues. See Rice v. Shinseki, 22 Vet. App. 447 (2009). In the instant case, the RO acknowledged the Veteran’s TDIU claim, but deferred the issue in an October 2017 rating decision. 
By a document labeled “other” dated in December 2016, the Veteran’s attorney specifically indicated that he does not wish to waive RO consideration for the additional evidence submitted in connection with the claim for a TDIU and higher rating for his service-connected MDD. However, while the RO adjudicated the Veteran’s rating issue in the October 2017 rating decision and subsequent October 2017 statement of the case (granting a higher rating to 70 percent for the entire period on appeal), as noted above, the RO deferred the decision on the TDIU claim. Accordingly, the TDIU claim is remanded for further development. 
The issue of TDIU is REMANDED for the following action:
1. Ensure that all outstanding VA treatment records dated from February 2015, forward, are associated with the claims file. 
2. Provide the Veteran with VA Form 21-8940, Veteran’s Application for Increased Compensation Based on Unemployability, for completion. Adjudication of entitlement to TDIU should be made contingent on whether the Veteran fills out the application. 38 C.F.R. § 3.358. The Veteran is advised that failure to complete the TDIU application may result in the claim being denied as abandoned. 
3. Develop the TDIU claim, to include verifying prior employment or obtaining any evidence the Veteran identifies. 
 
J. PARKER
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD A. Yaffe, Associate Counsel