﻿Citation Nr: AXXXXXXXX
Decision Date: 10/31/19 Archive Date: 10/31/19

DOCKET NO. 190325-5140
DATE: October 31, 2019

ORDER

Entitlement to an increased evaluation, in excess of 70 percent for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD) is denied.

REMANDED

Entitlement to a total disability rating based on individual unemployability (TDIU) is remanded.

FINDING OF FACT

The Veteran’s PTSD does result in total occupational and social impairment.

CONCLUSION OF LAW

The criteria for entitlement to an increased evaluation, in excess of 70 percent for an acquired psychiatric disorder, to include PTSD have not been met. 38 U.S.C. § § 1155, 5107; 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.3, 4.7, 4.10, 4.130, Diagnostic Code 9411.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served as a member of the United States Army, with active duty service from August 1979 to April 1985 and from June 1991 to October 1991.

This appeal comes to the Board of Veterans’ Appeals (Board) from a rating decision, dated January 2019, issued by the Department of Veterans Affairs (VA) Regional Office (RO). In its decision, the RO continued the 70 percent disability evaluation of PTSD and denied entitlement to individual unemployability because there was no evidence that the Veteran’s service-connected disabilities were the reason for his termination of employment or his unemployment status. The January 2019 decision also continued a 50 percent rating for bilateral pes planus. 

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. In March 2019, the Veteran submitted a VA Form 10182 election form, selecting the Direct Review lane for his appeal. He limited his appeal to the denial of a rating greater than 70 percent for PTSD and entitlement to TDIU. 

Evidence was added to the claims file during a period of time when new evidence was not allowed. In January 2019, additional VA treatment records were received. Ordinarily, evidence submitted during a time when new evidence is not allowed, may not be considered by the Board. 84 Fed. Reg. 138, 182 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 20.300). However, the Court of Appeals for Veteran’s claims has held that VA treatment records are in constructive possession of the Secretary and must be considered if the material could be determinative of the claim. See Bell v. Derwinski, 2 Vet. App. 611 (1992). In light of the foregoing, the Board may consider VA treatment records dated prior to the date of the decision on appeal. 

To the extent that records dated after the date of the decision were associated with the claims folder, the Veteran may file a Supplemental Claim and submit or identify this evidence. 84 Fed. Reg. 138, 182 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.2501) if the Veteran wishes the AOJ to consider this evidence. If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision.

Increased Rating

A disability rating is determined by applying VA’s Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. Separate diagnostic codes identify the various disabilities. 38 U.S.C. § 1155; 38 C.F.R. § 4.1.

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. The Board may consider whether separate ratings may be assigned for separate periods of time - a practice known as “staged ratings,” - whether or not the claim concerns an initial rating. Fenderson v. West, 12 Vet. App. 119, 126-27 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

PTSD is rated under 38 C.F.R. § 4.130, Diagnostic Code 9411. The criteria authorize the Veteran’s currently assigned 70 percent rating for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships. Id.

A 100 percent rating is warranted for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id.

When evaluating a mental disorder, the rating agency shall consider the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the veteran’s capacity for adjustment during periods of remission. The rating agency shall assign an evaluation based on all the evidence of record that bears on occupational and social impairment, rather than solely on the examiner’s assessment of the level of disability at the moment of the examination. When evaluating the level of disability from a mental disorder, the rating agency will consider the extent of social impairment, but shall not assign an evaluation solely on the basis of social impairment. 38 C.F.R. § 4.126.

The use of the term “such as” in 38 C.F.R. § 4.130 demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Mauerhan v. Principi, 16 Vet. App. 436 (2002).

Entitlement to an increased evaluation, in excess of 70 percent for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD)

The Veteran had his first VA examination in February 2017. The Veteran reported that he experienced bombings of a building adjacent to his barrack with five or six American soldiers killed. He experienced symptoms including depressed mood, anxiety, suspiciousness, chronic sleep impairment, impaired judgment, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, difficulty in adapting to stressful circumstances, including work or a worklike setting, inability to establish and maintain effective relationships, and neglect of personal appearance and hygiene. The VA examiner noted that the Veteran’s expression was somber, his mood was dysthymic with mood congruent affect. His attitude was agitated but cooperative. There were no unusual psychomotor movements or behaviors. He was alert, awake, and focused. His speech was normal in volume, tone, and rate. The Veteran’s thinking was logical, and goal directed, and his observable cognitive function suggested average capacity in domains of memory and executive function. He experienced no psychotic symptoms and no suicidal or homicidal ideations or hallucinations/delusions were reported. He was oriented to person, place, and time. The Veteran was capable of managing his financial affairs. Therefore, the VA examiner concluded that the Veteran’s PTSD was more likely than not due to his claimed traumatic stressors. His military records showed the Veteran served in Saudi-Arabia from 1990-1991 as a Supply Specialist. Because the Veteran served in an area of hostile and/or terroristic activity, the fear threshold for a PTSD claim was conceded.

In March 2017, the RO granted service connection for the Veteran’s PTSD and assigned an initial 70 percent disability rating, effective December 30, 2016.

During a subsequent November 2018 mental status examination, the Veteran reported that his estrangement from his family continued, including not talking with his only son since 2012. He reported doing some occasional part-time lawn care work for a friend’s business, but nothing else. He had three impatient hospitalizations for alcohol/cocaine in VA facilities in 2008, 2012, and 2018. He had no suicidal thinking, but one homicidal thought involving potentially stabbing someone not long ago. He had been in outpatient treatment for many years but reported that he wanted to do a six-month alcohol program in early 2019 if possible. He had recurrent, involuntary, and intrusive distressing memories of the traumatic event, recurrent distressing dreams in which the content and/or effect of the dream were related to the traumatic event, dissociative reactions in which he felt or acted as if the traumatic event were recurring, intense or prolonged psychological distress at exposure to internal or external cues that symbolized or resembled an aspect of the traumatic event, and marked physiological reactions to internal or external cues that symbolized or resembled an aspect of the traumatic event. He had avoidance of or efforts to avoid distressing memories, thoughts, or feelings about or closely associated with the traumatic event, avoidance of or efforts to avoid external reminders that aroused distressing memories, thoughts, or feelings about closely associated with the traumatic event. He also experienced an inability to remember an important aspect of the traumatic event, peristent and exaggerated negative beliefs or expectations about oneself, others, or the world, peristent, distorted cognitions about the cause of consequences of the traumatic event that lead the Veteran to blame himself or others, peristent negative emotional state, markedly diminished interest or participation in significant activities, and feelings of detachment or estrangement from others. The Veteran had irritable behavior and angry outbursts, reckless or self-destructive behavior, hypervigilance, exaggerated startle response, problems with concentration, sleep disturbance, and duration of the disturbance for more than one month. The examiner concluded that the Veteran had occupational and social impairment with reduced reliability and productivity. His symptoms included depressed mood, anxiety, suspiciousness, near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively, chronic sleep impairment, impaired judgment, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, difficulty in adapting to stressful circumstances, including work or a work like setting, inability to establish and maintain effective relationships, impaired impulse control, such as unprovoked irritability with periods of violence, and neglect of personal appearance and hygiene. He was not well-oriented to person, place, and time, but did okay and was cooperative and pleasant. The Veteran was capable of managing his financial affairs.

The Veteran had not worked in a regular job since discharge from the Army in 1991. He also participated in decades of outpatient treatment, used numerous psychotropic medications, and had done at least three impatient treatments. He maintained a surprisingly open and pleasant demeanor, already making plans to move away from his very tempting set of friends who drink with him. He hoped to get a longer-term treatment to create more dramatic changes in his addictive tendencies. His presentation seemed like a person entrenched in an addiction more than anything else. He realized that sustaining this addiction would continue to reduce his cognitive abilities and retained him at a low quality of life. He seemed like he genuinely wanted to change but was not desperate about it. It seemed likely that he remained accepting and even enjoying some aspect of his group of drinking buddies and the life they lead, with only modest ambition to change. The VA examiner noted that the Veteran had difficulty attending to or was easily distracted from the task at hand, had difficulty maintaining concentration and focus on work over a period of time and tended to skip from one task to another without completing the prior task, he had intrusive thoughts which interfered with the ability to stay focused on the task at hand, significant difficulty functioning around other people, difficulty functioning as a team member, and felt uncomfortable around others.

Private medical treatment records ranging from November 2007 to June 2017 recorded numerous mental health notes for the Veteran’s PTSD. The Veteran has submitted extensive CAPRI medical records regarding his PTSD symptoms and treatment. The Veteran’s PTSD is manifested by symptoms including serious depression, anger, increased startle response, intrusive thoughts, feelings of guilt, flashbacks, nightmares, trouble sleeping, negative self-esteem/self-image, trouble understanding/concentrating/remembering, and isolation. No serious thoughts of suicide, attempted suicide, or hallucinations were reported. His private medical records contain a number of PTSD screening tests that yielded both positive and negative results. He also entered a substance abuse treatment program in November 2010. His November 2010 PTSD assessment noted that the Veteran had cocaine dependence, continuous use alcohol dependence, polysubstance dependence psychosis, reactive suicide and self-inflicted poisoning by unspecified drug or medical substance, depressive disorder, and chronic PTSD. He had a GAF score of 55. The Veteran was also prescribed medication as part of his PTSD treatment. The Veteran was hospitalized for PTSD and depression in January 2007, 2010, 2012, and 2015, however, he had no serious thoughts of suicide, attempted suicide, or hallucinations. A September 2015 outpatient mental health note noted that the Veteran had combat PTSD, remitted alcohol, marijuana and cocaine dependency and a history of major depression with psychotic features. He was still alert and oriented. The Veteran was also euthymic, fluently conversant, and pleasant. His thought processes were relevant/coherent, and his judgment and insight were intact. No suicidal or homicidal ideations or current hallucinations were noted. His mood was stable. Lastly, a January 2017 PTSD screening test was positive. The Veteran had nightmares about the traumatic event or thought about it when he did not want to. He tried hard not to think about the traumatic event or went out of his way to avoid situations that reminded him of it. He was constantly on guard, watchful, or easily startled. He did not report feeling numb or detached from others, activities, or his surroundings.

As addressed above, in order for a Veteran to be eligible for a 100 percent rating, he must have total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. 38 C.F.R. § 4.130. The November 2018 mental status examination noted that the Veteran, while experiencing a depressed mood, anxiety, suspiciousness, near-continuous panic or depression, chronic sleep impairment, impaired judgment, disturbances of motivation and mood, and impaired impulse control, did not have suicidal ideations and only experienced one prior homicidal ideation in the past. Similarly, there was no mania, and he had no active psychotic symptoms.

With respect to social interactions, total social impairment as a result of his PTSD is not shown. While he was estranged from his family, including not talking with his only son since 2012, it was noted that he had a group of friends he spent time with regularly. With respect to occupational impairment, the VA examiner reported that the Veteran had done occasional part-time lawn care work for a friend’s business. While it is unclear whether this part-time lawn care work constitutes protected employment, the Veteran has not made any assertions that any accommodations were made during the period of his lawn care employment for any of his service-connected disabilities. See 38 C.F.R. § 4.16(a). Moreover, the issue of entitlement to TDIU has been remanded. On remand, the AOJ should consider whether the Veteran’s part-time employment is marginal employment. Therefore, while the Veteran is able to hold a job and is still able to maintain relationships with a few people, he does not have total occupational and social impairment as contemplated by a 100 percent disability rating.

The medical evidence demonstrates that the Veteran’s social and occupational functioning is limited by several PTSD symptoms – depressed mood, anxiety, suspiciousness, chronic sleep impairment, impaired judgment, difficulty adapting to stressful circumstances, impaired impulse control and difficulty establishing and maintaining effective work and social relationships - but those symptoms are specifically listed in the criteria for the rating of 70 percent. The weight of the evidence is against a finding that the Veteran has total social and occupational impairment as contemplated by a 100 percent schedular evaluation.

Accordingly, his request for a schedular rating higher than 70 percent for service-connected PTSD is denied.

REASONS FOR REMAND

Although the Board regrets the additional delay, the Veteran’s remaining claim must be remanded before the Board is able to make a determination on the merits. Specifically, the Board finds that additional supporting evidence is required in developing the Veteran’s claim.

As the Veteran’s claim is being remanded, the Board requests that the AOJ contact the Veteran to ensure all available medical records have been obtained and associated with the claims file. The VA’s duty to assist includes obtaining records of relevant VA medical treatment. 38 U.S.C. § 5103A(c)(2); 38 C.F.R. § 3.159(c)(2), (c)(3). See also Bell v. Derwinski, 2 Vet. App. 611 (1992) (The VA is charged with constructive, if not actual, knowledge of evidence generated by the VA). Therefore, the AOJ should obtain and associate with the claims file any outstanding VA medical records, assuming they are adequately identified by the Veteran after any necessary clarification.

Entitlement to a total disability rating based on individual unemployability (TDIU) is remanded.

The Veteran submitted his application for TDIU in September 2018. On his VA Form 21-8940, the Veteran stated that he became too disabled to work due to his feet and his PTSD. However, the Veteran did not fill out the rest of the Form 21-8940, including the date he became too disabled to work or his job history. Rather, the Veteran wrote N/A in place of the prior employment and educational history. The record suggests that the Veteran may have performed some part time work for a friend. It is unclear if this employment is marginal or gainful employment. Therefore, the Board finds that a remand is required in order to allow the Veteran to complete a new TDIU form with an updated employment history that includes a clarification as to the nature and extent of any part time work in lawn care as previously mentioned by the Veteran.

Accordingly, the matter is REMANDED for the following action:

1. First, the AOJ should provide the Veteran with appropriate notice regarding the TDIU claim and request that he complete a VA Form 21-8940, Veteran’s Application for Increased Compensation Based on Unemployability, describing the Veteran’s employment history from 2016 to the present. The Veteran should be asked to clarify the nature and extent of any part time work in lawn care.

2. The AOJ should ask the Veteran to submit any additional evidence in support of a TDIU claim, to specifically include information on his work history, salary, and educational history.

 

DAVID L. WIGHT

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board K. Bristor

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.