﻿Citation Nr: AXXXXXXXX
Decision Date: 11/30/20 Archive Date: 11/30/20

DOCKET NO. 200114-53949
DATE: November 30, 2020

ORDER

Entitlement to an initial rating in excess of 10 percent for hypertension is denied.

Entitlement to a compensable initial rating for onychomycosis is denied.

Entitlement to an effective date earlier than June 12, 2017 for the grant of service connection for hypertension is denied.

Entitlement to an effective date earlier than June 12, 2017 for the grant of service connection for onychomycosis is denied.

FINDINGS OF FACT

1. Since the initial grant of service connection, the Veteran’s hypertension has not been manifested by blood pressure readings with diastolic pressure predominantly 110 or more, or systolic pressure predominantly 200 or more.

2. Since the initial grant of service connection, the Veteran’s onychomycosis has been manifested by a total exposed body area of less than five percent, no exposed area, no scarring or disfigurement, and no systematic therapy treatment.

3. On January 31, 2003, the Veteran filed an initial claim seeking entitlement to service connection for hypertension.

4. The Veteran’s original claim for entitlement to service connection for hypertension was denied in an April 2003 rating decision.

5. Rating actions issued in November 2005 and August 2006 continued the denial of the Veteran’s claim for service connection for hypertension. The Veteran did not file a notice of disagreement to the August 2006 rating decision, and no new and material evidence was received in the subsequent year.

6. On June 12, 2017, the Veteran filed a formal claim to reopen entitlement to service connection for hypertension; thus, the date of claim for entitlement to service connection for hypertension is June 12, 2017.

7. The Veteran’s claim for service connection for onychomycosis was received at the AOJ on June 12, 2017; there is nothing in the record received prior to June 12, 2017, which could be construed as a claim of service connection for onychomycosis.

CONCLUSIONS OF LAW

1. The criteria for entitlement to an initial rating in excess of 10 percent for hypertension have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.104, Diagnostic Code 7107.

2. The criteria for entitlement to a compensable initial rating for onychomycosis have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.118, Diagnostic Code 7813-7806. 

3. The criteria for entitlement to an effective date earlier than June 12, 2017 for the grant of service connection for hypertension have not been met. 38 U.S.C. § 5110; 38 C.F.R. §§ 3.151, 3.155, 3.400.

4. The criteria for entitlement to an effective date earlier than June 12, 2017 for the grant of service connection for onychomycosis have not been met. 38 U.S.C. § 5110; 38 C.F.R. §§ 3.151, 3.155, 3.400.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active military service in the U.S. Air Force from March 1966 to June 1986.

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review.

This matter comes to the Board of Veterans’ Appeals (Board) on appeal from a November 2019 rating decision issued by a Regional Office (RO) of the Department of Veterans Affairs (VA). The Veteran timely appealed the decision to the Board by submitting a January 2020 Decision Review Request: Board Appeal (Notice of Disagreement) and requested a direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ) without a Board hearing.

Increased Ratings

Disability ratings are determined by the application of the VA’s Schedule for Rating Disabilities (Schedule), which is based on the average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C. § 1155; 28 C.F.R. Part 4. Pertinent regulations do not require that all cases show all findings specified by the Schedule, but that findings sufficient to identify the disease and the resulting disability and above all, coordination of the rating with impairment of function will be expected in all cases. 38 C.F.R. § 4.21; see also Mauerhan v. Principi, 16 Vet. App. 436 (2002). Where the Rating Schedule does not provide for a noncompensable evaluation for a diagnostic code, a noncompensable evaluation shall be assigned when the requirements for a compensable evaluation are not met. 38 C.F.R. § 4.31.

The primary concern in a claim for an increased evaluation for service-connected disability is the present level of disability. Although the overall history of the disability is to be considered, the regulations do not give past medical reports precedence over current findings. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, when an appeal is based on the assignment of an initial rating for a disability, following an initial award of service connection for this disability, the rule articulated in Francisco does not apply. Fenderson v. West, 12 Vet. App. 119 (1999). Instead, the evaluation must be based on the overall recorded history of a disability, giving equal weight to past and present medical reports. Id. VA has a duty to consider the possibility of assigning staged ratings in all claims for increase. See Hart v. Mansfield, 21 Vet. App. 505 (2007).

1. Entitlement to an initial rating in excess of 10 percent for hypertension 

Service connection for hypertension was granted in a November 2019 rating decision, and an initial disability rating of 10 percent was assigned, effective June 12, 2017, under 38 C.F.R. § 4.104, Diagnostic Code 7101.

The Veteran contends that he is entitled to an initial rating in excess of 10 percent for hypertension.

The Veteran’s hypertension is rated as 10 percent disabling under Diagnostic Code 7101. Under this diagnostic code, hypertension is rated as 10 percent disabling when there is diastolic pressure predominantly 100 or more, or; systolic pressure predominantly 160 or more, or; minimum evaluation for an individual with a history of diastolic pressure predominantly 100 or more who requires continuous medication for control. 38 C.F.R. § 4.104, Diagnostic Code 7101. A 20 percent evaluation is assigned when there is diastolic pressure predominantly 110 or more, or systolic pressure predominantly 200 or more. Id.

The medical evidence of record includes numerous blood pressure readings relevant to this issue. For the purpose of reporting these blood pressure readings, the systolic blood pressure reading will be listed first, followed by a slash, and the diastolic blood pressure reading will be listed last.

VA treatment records from 2017 through 2019 show blood pressure readings of 152/83, 148/88, 172/78, 154/82, 131/78, 150/84, 136/76, 129/81, 144/74, 135/75, 150/94/ 148/85, 142/88, 148/92, 149/98, and 133/83. These records also show that the Veteran takes medication to control his blood pressure. The medication includes amlodipine, doxazosin, losartan, and clonidine. 

In November 2019, the Veteran underwent a VA hypertension examination. The examiner noted that the Veteran was prescribed amlodipine, losartan, and hydrochlorothiazide to treat his hypertension. On examination, the Veteran’s blood pressure readings were 140/80, 138/80, and 142/84. The diagnosis was hypertension. The examiner indicated that the Veteran’s hypertension did not impact his ability to work.

After a thorough review of the evidence of record, the Board concludes that an initial rating greater than 10 percent is not warranted for the Veteran’s service-connected hypertension. None of the objective medical evidence demonstrates blood pressure readings with diastolic pressure predominantly 110 or more or systolic pressure predominantly 200 or more. In that regard, there are approximately 19 blood pressure readings in the medical evidence during the applicable time period, each of which reflects diastolic blood pressure less than 110 and systolic pressure less than 200. In the absence of any evidence showing diastolic pressure predominantly 110 or more or systolic pressure predominantly 200 or more, an initial rating greater than 10 percent is not warranted for the Veteran’s service-connected hypertension under the pertinent diagnostic criteria. 38 C.F.R. § 4.104, Diagnostic Code 7101.

Based on the foregoing, an initial rating greater than 10 percent for hypertension is not warranted.

2. Entitlement to a compensable initial rating for onychomycosis 

Service connection for onychomycosis was granted in a November 2019 rating decision, and a noncompensable initial rating was assigned effective June 12, 2017. This disability is rated under Diagnostic Code 7813-7806. Hyphenated Diagnostic Codes are used when a rating under one Diagnostic Code requires use of an additional Diagnostic Code to identify the basis for the evaluation assigned. See 38 C.F.R. § 4.27.

The Veteran contends that he is entitled to a compensable rating for onychomycosis of the bilateral toenails.

VA amended the criteria for rating skin disabilities, effective August 13, 2018. These new regulations apply to all applications for benefits received by VA or that are pending before the agency of original jurisdiction on or after August 13, 2018. Claims pending prior to the effective date will be considered under both old and new rating criteria, and whatever criteria is more favorable to the veteran will be applied. The Board may not apply a current regulation prior to its effective date, unless the regulation explicitly provides otherwise. Kuzma v. Principi, 341 F.3d 1327 (Fed. Cir. 2003). However, the Board is not precluded from applying prior versions of the applicable regulation to the period on or after the effective dates of the new regulation if the prior version was in effect during the pendency of the appeal.

Prior to August 13, 2018, under Diagnostic Code (DC) 7806, a noncompensable rating is assigned for less than 5 percent of the entire body or less than 5 percent of exposed areas affected, and; no more than topical therapy required during the past 12 months. A 10 percent rating is assigned for at least 5 percent, but less than 20 percent, of the entire body, or; at least 5 percent, but less than 20 percent, of exposed areas affected, or; intermittent systemic therapy such as corticosteroids or other immunosuppressive drugs required for a total duration of less than six weeks during the past 12-month period. A 30 percent rating is assigned for 20 to 40 percent of the entire body or 20 to 40 percent of exposed areas affected, or; systemic therapy such as corticosteroids or other immunosuppressive drugs required for a total duration of six weeks or more, but not constantly during the past 12-month period. A 60 percent rating is assigned for more than 40 percent of the entire body or more than 40 percent of exposed areas affected, or; constant or near- constant systemic therapy such as corticosteroids or other immunosuppressive drugs required during the past 12- month period. Or rate as disfigurement of the head, face, or neck (DC 7800) or scars (DCs 7801, 7802, 7803, 7804, or 7805), depending on the predominant disability. 38 C.F.R. § 4.118, Diagnostic Code 7806.

For claims filed prior to August 13, 2018, the U.S. Court of Appeals for Veterans Claims (Court) has held that a systematic therapy is one that that affects the entire body in its treatment of the condition at issue, and that the Board must determine (1) whether a topical treatment affects the body as a whole in treating a veteran's skin condition; and (2) whether the given treatment is “like” a corticosteroid or other immunosuppressive drug. Burton v. Wilkie, 30 Vet. App. 286 (2018). Only the second question need be addressed if the treatment is clearly systemic. Id.

Effective August 31, 2018, VA regulations explicitly state that systemic therapy is treatment that is administered through any route other than the skin, and topical therapy is treatment that is administered through the skin. 38 C.F.R. § 4.118(a).

Additionally, effective August 13, 2018, a new General Rating Formula for the Skin applies to Diagnostic Codes 7806, 7809, 7813 to 7816, 7820 to 7822, and 7824. See 38 C.F.R. § 4.118. Under this formula, a noncompensable rating is assigned for no more than topical therapy required over the past 12-month period and at least one of the following: characteristic lesions involving less than 5 percent of the entire body affected; or characteristic lesions involving less than 5 percent of exposed areas affected. A 10 percent rating is assigned for at least one of the following: characteristic lesions involving at least 5 percent, but less than 20 percent, of the entire body affected; or at least 5 percent, but less than 20 percent, of exposed areas affected; or intermittent systemic therapy including, but not limited to, corticosteroids, phototherapy, retinoids, biologics, photochemotherapy, PUVA, or other immunosuppressive drugs required for a total duration of less than 6 weeks over the past 12- month period. A 30 percent rating is assigned at least one of the following: characteristic lesions involving more than 20 to 40 percent of the entire body or 20 to 40 percent of exposed areas affected; or systemic therapy including, but not limited to, corticosteroids, phototherapy, retinoids, biologics, photochemotherapy, PUVA, or other immunosuppressive drugs required for a total duration of 6 weeks or more, but not constantly, over the past 12-month period. A 60 percent rating is assigned for at least one of the following: characteristic lesions involving more than 40 percent of the entire body or more than 40 percent of exposed areas affected; or constant or near-constant systemic therapy including, but not limited to, corticosteroids, phototherapy, retinoids, biologics, photochemotherapy, psoralen with long-wave ultraviolet-A light (PUVA), or other immunosuppressive drugs required over the past 12-month period. Or rate as disfigurement of the head, face, or neck (DC 7800) or scars (DCs 7801, 7802, 7803, 7804, or 7805), depending on the predominant disability. 38 C.F.R. § 4.118, General Rating for the Skin for DCs 7806, 7809, 7813-7816, 7820-7822, and 7824.

Prior to August 13, 2018, Diagnostic Code 7813 instructed to rate as disfigurement of the, face, or neck (DC 7800) or scars (DCs 7801, 7802, 7803, 7804, or 7805), or dermatitis (7806) depending on the predominant disability. 38 C.F.R. § 4.118, Diagnostic Code 7813.

After a complete review of the record, the Board finds that the Veteran’s onychomycosis of the feet has not been manifested by involvement of at least 5 percent, but less than 20 percent, of the entire body, or at least 5 percent, but less than 20 percent, of exposed areas. Further, the evidence shows that the disorder has not required any systematic therapy during the past 12-month period.

In this regard, at his November 2019 VA skin examination, onychomycosis of the bilateral toenails was not found to affect any exposed body area, and to affect less than 5 percent of total body area. The only treatment was topical antifungal cream, and no further functional impairment was reported.

VA treatment records throughout the period on appeal show ongoing treatment with topical antifungal cream for his onychomycosis of the bilateral toenails, as well as toenail debridement.

The Board acknowledges that the Veteran believes that his onychomycosis of bilateral toenails has been more severe than the assigned disability rating reflects. Moreover, the Veteran is competent to report observable symptoms, to include toenail fungus, and his reports are credible. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). However, medical treatment records do not show that the Veteran’s disability more nearly approximates the criteria for a compensable rating.

The Board has considered whether any other Diagnostic Codes related to disabilities of the skin would provide for a higher disability evaluation. However, the evidence does not reflect that he would warrant a higher rating under a different diagnostic code. See 38 C.F.R. § 4.118.

In conclusion, the Board finds that the preponderance of the evidence is against the Veteran’s claim for a compensable rating for onychomycosis of the bilateral toenails. In denying such a rating the Board finds the benefit of the doubt doctrine is not applicable. 38 U.S.C. § 5107; 38 C.F.R. §§ 4.3, 4.7. 

Effective Dates

The effective date of an award of disability compensation, in conjunction with a grant of entitlement to service connection on a direct basis, shall be the day following separation from active service or the date entitlement arose if the claim is received within one year of separation from service. Otherwise, the effective date shall be the date of receipt of the claim, or the date entitlement arose, whichever is later. 38 U.S.C. § 5110; 38 C.F.R. § 3.400(b)(2)(i).

For VA compensation purposes, a “claim” is defined as “a written communication requesting a determination of entitlement or evidencing a belief in entitlement, to a specific benefit under the laws administered by the Department of Veterans Affairs submitted on an application form prescribed by the Secretary.” 38 C.F.R. § 3.1(p); see also Brannon v. West, 12 Vet. App. 32, 34-35 (1998). An informal claim is “[a]ny communication or action indicating an intent to apply for one or more benefits.” 38 C.F.R. § 3.155(a). It must “identify the benefit sought.” Id. Thus, the essential elements for any claim, whether formal or informal, are “(1) an intent to apply for benefits, (2) an identification of the benefits sought, and (3) a communication in writing.” Brokowski v. Shinseki, 23 Vet. App. 79, 84 (2009). VA must look to all communications from a claimant that may be interpreted as an application or claim, both formal and informal, for benefits and is required to identify and act on informal claims for benefits. See Servello v. Derwinski, 3 Vet. App. 196, 198 (1992).

3. Entitlement to an effective date earlier than June 12, 2017 for the grant of service connection for hypertension 

The Veteran seeks an effective date earlier than June 12, 2017 for the grant of service connection for hypertension as secondary to service-connected PTSD. See Statement in Support of Claim, received by VA in January 2020. On June 12, 2017, the AOJ received the Veteran’s formal claim for hypertension, but service connection was not granted until a November 2019 rating decision. The November 2019 rating decision assigned a 10 percent rating for hypertension as secondary to service-connected PTSD, with an effective date of June 12, 2017. The AOJ explained that June 12, 2017 is the earliest effective date that can be assigned, as it is the date the AOJ received the Veteran’s reopened claim as his prior claims for service connection were all final.

The Veteran appealed the rating decision in a January 2020 Decision Review Request: Board Appeal (Notice of Disagreement). In a statement in support of the claim filed with the Decision Review Request: Board Appeal (Notice of Disagreement), the Veteran asserted that the effective date for hypertension should be extended back to when he was in service. He contends that his service treatment records show that high blood pressure readings in January and February and 1986.

Review of the record shows that the Veteran’s initial claim for entitlement to service connection for hypertension was denied by the AOJ in an April 2003 rating decision. The Veteran did not file a timely notice of disagreement to the April 2003 rating decision, and it became final. In a November 2005 rating decision, the RO again denied entitlement to service connection for hypertension. The Veteran did not file a timely notice of disagreement to the November 2005 rating decision, and it became final. In February 2006, the Veteran filed a claim seeking to reopen his prior claim for entitlement to service connection for hypertension. In an August 2006 rating decision, the AOJ reopened the claim, but denied entitlement to service connection on the merits. The Veteran did not file a timely notice of disagreement to the August 2006 rating decision, or submit new and material evidence within one year of the rating decision, and it became final. On June 12, 2017, the Veteran filed a new claim seeking entitlement to service connection for hypertension.

The effective date of an award of service connection based on new and material evidence received after a final adjudication will be the later of the date entitlement arose or the date of receipt of the reopened claim unless the new and material evidence consists of service department records, in which case the effective date will be the later of the date entitlement arose or the date of receipt of the earlier claim. 38 U.S.C. § 5110; 38 C.F.R. § 3.400.

The November 2019 rating decision assigned an effective date of June 12, 2017 based on the most recent date of claim for service connection for hypertension following earlier final rating decisions denying service connection. The evidence of record does not reveal that a formal or informal claim for entitlement to service connection for hypertension was received after the last final denial of August 2006 and prior to June 12, 2017. See 38 C.F.R. § 3.155. The claim received on June 12, 2017 is the earliest communication received by the Veteran indicating an intent to apply for service connection after the August 2006 final denial of his claim. Thus, June 12, 2017 is the date of claim for the claim to reopen the issue of entitlement to service connection for hypertension.

Although the Veteran’s hypertension was found to be secondary to his service-connected PTSD and service connection for PTSD was awarded an effective date of April 20, 2012, a nexus between the Veteran’s hypertension and his service-connected PTSD was not established until the November 2019 VA hypertension examination. Because the effective date for the claim for service connection for hypertension as secondary to service-connected PTSD is already set at the earliest effective date possible under 38 U.S.C. § 5110 and 38 C.F.R. § 3.400(b)(2)(i), the Board finds that the effective date of June 12, 2017 is appropriate for the claim for service connection for hypertension as secondary to service-connected PTSD. 

The Board acknowledges the Veteran’s contention that an earlier effective date is warranted because his service treatment records show that high blood pressure readings in January and February and 1986. Without deciding whether or not the evidence supports such a determination, the Board observes that there is no provision in the law for awarding an earlier effective date based simply on the presence of the disability. See Brannon, 12 Vet. App. at 35 (the mere presence of medical evidence of a condition does not establish an intent on the part of the veteran to seek service connection for the disability). Moreover, the Veteran has not alleged clear and unmistakable error (CUE) in any prior final rating decision denying entitlement to service connection for hypertension.

38 C.F.R. § 3.400 is clear that the effective date for an award of service connection is the later of the date entitlement arose or the date the claim was received. Thus, the effective date of the award of compensation cannot be earlier than the date of receipt of the claim to reopen, which in this case is June 12, 2017. Accordingly, an effective date earlier than June 12, 2017 for the award of service connection for hypertension is not possible in this case.

The pertinent legal authority governing effective dates in this case is clear and specific, and the Board is bound by this authority. Pursuant to this authority, the Board finds that there is no legal basis by which an effective date earlier than June 12, 2017 for the grant of service connection for hypertension can be assigned; thus, the claim for an earlier effective date for the award of service connection for hypertension must be denied. 38 C.F.R. §§ 3.400(b)(2)(i), 3.400(r).

4. Entitlement to an effective date earlier than June 12, 2017 for the grant of service connection for onychomycosis 

The Veteran contends that an effective date prior to June 12, 2017 is warranted for the awards of service connection for onychomycosis as secondary to service-connected DM II. See Statement in Support of Claim, received by VA in January 2020. He contends that his service treatment records show that he has had fungal infection of the toenails since service.

The Veteran’s initial claim for entitlement to service connection for onychomycosis was received by VA on June 12, 2017 and was granted in a November 2019 rating decision. The November 2019 rating decision awarded service connection for onychomycosis as secondary to service-connected DM II, and assigned a non-compensable rating, effective as of June 12, 2017. The Veteran appealed the rating decision in a January 2020 Decision Review Request: Board Appeal (Notice of Disagreement). In a statement in support of the claim filed with the Decision Review Request: Board Appeal (Notice of Disagreement), the Veteran asserted that the effective date for onychomycosis as secondary to service-connected DM II should be extended back to when he was in service. 

After thorough consideration of the evidence the record, the Board concludes that an effective date prior to June 12, 2017 is not warranted for the grant of service connection for onychomycosis secondary to service-connected DM II. 38 C.F.R. § 3.400(b)(2)(i).

The evidence of record does not reveal that a formal or informal claim for service connection for onychomycosis was received prior to June 12, 2017. See 38 C.F.R. § 3.155. Accordingly, the earliest communication indicating an intent to apply for service connection for onychomycosis in the Veteran’s claims file was received by VA on June 12, 2017.

Additionally, the Board finds the Veteran’s claim for service connection for onychomycosis was not filed within one year after his separation from service. The Veteran separated from service in June 1986. The claim of entitlement to service connection for onychomycosis was received over two decades after separation from service. Accordingly, the Veteran is not entitled to an effective day on the day after his separation.

The Board acknowledges the Veteran’s argument that his service treatment records show that he had a fungal infection of the toenails in service. Without deciding whether or not the evidence supports such a finding, the Board observes that there is no provision in the law for awarding an earlier effective date based simply on the presence of the disability. See Brannon, 12 Vet. App. at 35 (the mere presence of medical evidence of a condition does not establish an intent on the part of the veteran to seek service connection for the disability).

The pertinent legal authority governing effective dates in this case is clear and specific, and the Board is bound by this authority. Pursuant to this authority, the Board finds that there is no legal basis by which an effective date earlier than June 12, 2017 for the grant of service connection for onychomycosis can be assigned; thus the claim for an earlier effective date for entitlement to service connection for onychomycosis must be denied. 38 C.F.R. § 3.400(b)(2)(i).

 

 

MICHELLE P. KATZ

Acting Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board E. Fairlie, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.